OF THE

# SUPREME COURT OF APPEALS

## OF WEST VIRGINIA.

## FALL-SPECIAL TERM, 1882.*

## WHEELING.

### Hoge, Adm'r, v. Vintroux et al.

Submitted August 14, 1882—Decided November 25, 1882.

1. In a suit on the bond of an administrator against the principal and sureties therein, the bar of the statute of limitations, as to such sureties, is ten years from the return day of an execution issued on the plaintiff's claim; or ten years from the time the administrator shall have been ordered by a court acting upon his account, to pay such claim. (p. 10.)

2. Where a non-negotiable note or bond is given by a debtor to his creditor for an existing debt, such bond or note is *prima facie* not a conditional payment but collateral security for such debt; though it may be shown, by either direct or circumstantial evidence to have been intended by the parties to be an absolute or conditional payment. If such bond or note was received as collateral security, though it be made payable at a future time, unless there was an agreement to postpone the right of action on the original debt proven by other evidence direct or circumstantial, the taking of such collateral security does not suspend the right of action on the original debt, and therefore does not release the sureties from their liability. *Sayre* v. *King*, 17 W. Va. 562. (p. 10.)

---

*The other cases determined at this term were reported in volume xx.

3. An administrator as such, being indebted to an insane distributee, offers to give to the committee of such distributee his bond for such indebtedness, and the committee accepts such offer and the administrator executes to the committee his bond and the latter gives him a receipt, reciting therein that *the note* of the administrator has been received for the amount of such indebtedness and the administrator, in a subsequent, *ex parte*, settlement of his administration accounts, is credited with the said amount, but said bond is never paid and the administrator, having died and his estate found to be insolvent, such bond will not be held to be a payment of said indebtedness and the sureties on the administration bond will be made liable therefor to the representatives of such distributee. (p. 11.)

4. A case in which the decree of the circuit court is reversed for want of proper parties to the suit, and because the rights and liabilities of the parties were not properly ascertained and adjusted in the suit or by said decree.

Appeal from and *supersedeas* to a decree of the circuit court of the county of Putnam rendered on the 6th day of May, 1880, in a cause in said court then pending, wherein James W. Hoge, administrator, was plaintiff, and O. L. Vintroux, executrix, and others were defendants, allowed upon the petition of said defendants.

Hon. Joseph Smith, judge of the seventh judicial circuit, rendered the decree appealed from.

The facts of the case fully appear in the opinion of the Court.

*John W. English* for appellant cited the following authorities: 3 Rob. Pr. (new) p. 65, 265, 266; 6 Mass. 58; 5 Mass. 299; 1 Wash. 199; 3 W. Va. 285; 11 Mass. 26; 17 W. Va. 135; Code of Va. (1849) p. 394 § 45; 17 W. Va. 562; 25 Gratt. 211; 2 Wall. 235; 32 Gratt. 1; White & Tudor Lead. Cas. Eq. Pt. II. vol. 2 p. 378; 5 Ire. Eq. 91; 7 Hill 250; 3 Den. 512; 2 Whart. 253.

*Smith & Knight* for appellee cited the following authorities: Code ch. 136 § 4; 7 W. Va. 63; Code ch. 104 § 6, 16; 10 W. Va. 220; 36 Am. Rep. 261; 26 Am. Dec. 166; 4 McLean 120; 9 Gratt. 252; 17 W. Va. 562.

SNYDER, JUDGE, announced the opinion of the Court:

This suit was brought in the circuit court of Putnam county, on the 5th day of October, 1868, by James W. Hoge, administrator of Mary Staton, deceased, to surcharge and falsify the accounts of Lewis E. Vintroux as administrator of James Staton, deceased, and to recover from said Vintroux's executrix and his sureties on his official bond as such administrator, a large sum alleged to be due to the estate of said Mary Staton as the widow of said James Staton. Olivia L. Vintroux as executrix of L. E. Vintroux, deceased, Robert M. Hall, John Bowyer, Robert T. Harvey and L. J. Timms as administrator of Allen Sebrell, deceased, were made defendants to the bill. During the pendency of the suit said John Bowyer died and J. T. Bowyer and J. B. Dudding, his executors, were made parties defendants as such executors. All the defendants except L. J. Timms, administrator &c., demurred to the plaintiff's bill generally and for the want of proper parties, and they, also, answered said bill. In their answers they pleaded the statute of limitations and denied any breach of the administration bond of said L. E. Vintroux as administrator as aforesaid, or that there was any liability on them, or either of them, by reason of the matters alleged in plaintiff's bill. The court overruled said demurrer and, at a subsequent term, the plaintiff amended his bill by making J. J. Thompson, late committee of said Mary Staton, a party defendant. After having referred the cause to a commissioner for certain accounts, which were taken and reported but never acted on by the court, the cause was, on May 6, 1880, finally heard, and the court having decided that the plaintiff's right to recover was not barred by the statute of limitations, decreed that the plaintiff as administrator of Mary Staton, deceased, recover against the defendants, Robert M. Hall and Robert T. Harvey *de bonis propriis,* and against J. T. Bowyer and J. B. Dudding, executors, O. L. Vintroux, executrix, and J. L. Timms, administrator &c., *de bonis testatoris,* six thousand five hundred and ninety-nine dollars and sixty-eight cents with interest thereon from the said 6th day of May, 1880, until paid and costs. From this decree J. T. Bowyer and J. B. Dudding, executors, R. M. Hall and R. T. Harvey have appealed to this Court.

The material facts as shown by the record are as follows:

On the 27th day of June, 1853, Lewis E. Vintroux qualified in the county court of Putnam county as administrator of James Staton, deceased, and gave bond as such administrator in the penalty of twenty thousand dollars, with John Bowyer, Robert T. Harvey, Robert M. Hall and Allen Sebrell as his sureties. The said James Staton left a large amount of personal and real estate, also, a widow, the said Mary Staton, and several children as his heirs and distributees. His widow, the said Mary, having become a lunatic, J. J. Thompson, on the 20th day of July, 1856, qualified as her committee in the county court of Putnam county, and on June 23, 1857, the said L. E. Vintroux admitted that there was in his hands as such administrator two thousand eight hundred dollars due the said Mary as of January 1, 1855, and offered to give to said Thompson as her committee his bond for said sum and take his receipt therefor, which offer the said Thompson accepted and the bond and receipt were given and are in the words following:

"$2,800.        One day after date, I promise and bind myself, my heirs, &c., to pay J. J. Thompson, committee of Mary Staton, the sum of two thousand eight hundred dollars, with legal interest from the first day of January, 1855, for value received.

"As witness my hand and seal this 23d day of June, 1857.

"L. E. VINTROUX, [SEAL.]

"*Administrator of estate of Jas. Staton, deceased.*"

On the back of said bond is this endorsement:

"January 1, 1858, by your note for five hundred and four dollars."

RECEIPT.

"$2,800.        Received of L. E. Vintroux, administrator of the estate of James Staton, deceased, his note for two thousand eight hundred dollars, payable one day after date, bearing interest from the 1st day of January, 1855, and dated the 23d June, 1857.

"J. J. THOMPSON,

"*Committee of the estate of Mary Staton.*"

On the 1st day of October, 1857, said L. E. Vintroux made an *ex parte* settlement of his administration accounts before J. W. Hoge a commissioner of the county court of

said county and was therein credited with two thousand eight hundred dollars as having been paid by him to J. J. Thompson committee, per his receipt; and there was also found due by said settlement from said administrator as of September 1, 1857, two hundred and thirty-six dollars and thirty-one cents to the estate of his intestate.

This settlement was returned to the recorder's office of said county and recorded therein on the 18th day of February, 1865. Some time between March 22, 1858, and August 23, 1858, said Thompson resigned his trust as such committee and J. W. Hoge about the same time, was appointed and qualified as such committee of said Mary. In September, 1858, the said Thompson made a settlement of his accounts as committee of the said Mary before J. W. Hoge, a commissioner of said county court. From this settlement it appears that said Thomson had, on or before August 23, 1858, delivered to said J. W. Hoge as his successor four thousand seven hundred and twenty-eight dollars and eight cents in bonds on different persons belonging to the estate of said lunatic and among them the said bond of L. E. Vintroux, administrator, for two thousand eight hundred dollars, subject to a credit by said Vintroux's bond for five hundred and four dollars, dated and due January 1, 1858; and, also, said bond for five hundred and four dollars subject to a credit for one hundred and fifty dollars paid June 28, 1858. This latter bond was given for the interest on said bond of two thousand eight hundred dollars from January 1, 1855, to January 1, 1858. This settlement was returned to said recorder's office and recorded therein, on January 11, 1868. The said Mary Staton, having died, prior to July 25, 1859, the said J. W. Hoge, on that day, quaified as her administrator; and the said L. E. Vintroux and Allen Sebrell, having, also, died, O. L. Vintroux, the widow of the former, qualified as his executrix on the 26th May, 1862, and L. J. Timms qualified as the administrator of the latter May 11, 1868. In January, 1868, the said J. W. Hoge as late committee and as administrator of said Mary Staton, made an *ex parte* settlement of his accounts as such committee and administrator before J. T. Bowyer, a commissioner of the recorder's court of said county. The said

commissioner in his report of said settlement states, and the report shows he correctly so states, that he, "on the 1st day of January, 1868, finds that the said James W. Hoge has in his hands, principal and interest, due by the bonds of Dr. James Stewart, and L. E. Vintroux for himself and as administrator of James Staton, sr., deceased, the sum of eight thousand two hundred and seven dollars and twenty-one cents, and that said estate is indebted to said committee, James W. Hoge, in the sum of eight hundred and ninety-one dollars and thirteen cents for money advanced by him, and its interest, his commissions and the cost of this commissioner in taking this account; that after the payment of the amount so due the said Hoge, there will be left the sum of seven thousand three hundred and sixteen dollars and eight cents to be divided into five parts between her children and heirs, to-wit: One thousand four hundred and sixty dollars and twenty-one and three fifths cents to Moses F. Ward; a like sum to Mrs. — Thomas; a like sum to Mrs O. L. Vintroux; a like sum to Mrs. Martha Stewart and a like sum to Mrs. Geo. W. Cox, Simon C. Staton and Martha Staton, children of James Staton, jr., deceased; that Dr. Stewart will be entitled to the sum of forty dollars and seventy-seven cents, as his wife's share of the estate, more than he is indebted to the same; that after the payment of the amount due Hoge as aforesaid, and the said forty dollars and seventy-seven cents to Dr. Stewart, and allowing her her share, Mrs. O. L. Vintroux, as the executrix of L. E. Vintroux and administrator *de bonis non* of the estate of James Staton, sr., deceased, will owe the sum of four thousand three hundred and eighty-nine dollars and sixty-four cents, to be divided equally between Moses F. Ward, Mrs. — Thomas and the said heirs of James Staton, jr., deceased."

It will be observed that in the above statement the commissioner mentions Mrs. O. L. Vintroux as being the administratrix *de bonis non* of James Staton, sr., deceased. There is nothing in the record here to show that she ever qualified as such administratrix, and I take it that said statement is incorrect—the commissioner, evidently regarding her as such administratrix by reason of her being the executrix of L. E. Vintroux who had been administrator of said James Staton, sr.

The aforesaid settlement of J. W. Hoge was returned to said recorder's office and on July 7, 1868, recorded therein.

Between January, 1864, and May 9, 1868, O. L. Vintroux, as executrix of L. E. Vintroux, deceased, made three several *ex parte* settlements of her executorial accounts before commissioners of the recorder's court of said county, the last of which was recorded therein April 25, 1870, and the others before that date. From these settlements it appears that over twenty thousand dollars of assets came into her hands as executrix, and that she paid debts of her testator to an amount exceeding forty thousand dollars.

In the commissioner's report made in this cause the commissioner states, "that assets belonging to the estate of L. E. Vintroux, deceased, to the amount of nineteen thousand two hundred and eighty-three dollars and nine cents, went into the hands of the defendant, O. L. Vintroux, as his executrix, and that she paid out for said estate, including her commissions, forty-one thousand three hundred and ninety-two dollars and forty-five cents, leaving due her as such executrix twenty-two thousand one hundred and nine dollars and thirty-six cents. Of this amount thirty-one thousand and twenty-six dollars and ninety-nine cents was expended in paying the bonds and accrued interest of said L. E. Vintroux, five thousand three hundred and forty-two dollars and sixty-seven cents was paid on judgments, three thousand eight hundred and thirty-four dollars and eighty-two cents was paid in discharge of open accounts and costs of administration, including one thousand nine hundred and seventy-four dollars and ninety-three cents allowed executrix as commissions, and the remainder two hundred and sixty-nine dollars and twenty cents was paid for taxes." The said commissioner, also, reports the unpaid claims against the estate of L. E. Vintroux as of September 1, 1874, and the order of their priorities as follows:

| | |
|---|---:|
| Amount due O. L. Vintroux, executrix | $22,109.36 |
| Bond and interest sued on in this cause | 5,600.00 |
| Judgment of R. B. Swindler | 471.46 |
| Judgment of Langley & Kincaid | 476.74 |
| Judgment of J. W. Hoge, administrator, &c. | 2,803.12 |
| Balance due estate of James Staton | 478.02 |
| Total unpaid debts | $31,938.70 |

The aforesaid bond of five hundred and four dollars due January 1, 1858, for interest on the bond of two thousand eight hundred dollars from January 1, 1855, to January 1, 1858, is included in and forms part of the above judgment for two thousand eight hundred and three dollars and twelve cents in favor of J. W. Hoge, administrator, &c.

The said commissioner, also, reports, "that the two thousand eight hundred dollars credited by commissioner J. W. Hoge to L. E. Vintroux, administrator of James Staton, deceased, as paid to the committee of Mrs. Mary Staton, was never actually paid by him; that the said Vintroux as administrator of the estate of James Staton, deceased, was indebted to the committee of Mrs. Mary Staton in the sum of two thousand eight hundred dollars for her dower interest in the personal estate of her husband, James Staton, and in place of paying over that amount in cash to the committee he retained the money and gave his bond for the amount which the said committee consented to receive; that in fact no money passed between them. Your commissioner is of opinion that it was not the intention of said L. E. Vintroux or of the said J. J. Thompson as committee to release the said Vintroux as administrator of James Staton from liability as such administrator for said two thousand eight hundred dollars to the estate of Mary Staton." This conclusion of the commissioner, I think, is fully sustained by the form of the bond and receipt given and the testimony of J. J. Thompson taken in the cause.

It further appears from said commissioner's report, that all the assets of the estate of L. E. Vintroux have been disbursed and that there is nothing now, or likely to come, into the hands of his executrix to pay any part of the aforesaid unpaid debts. It is, also, shown, as I think distinctly, by the proof in this cause that Mrs. O. L. Vintroux as executrix and Dr. James Stewart, her agent, in settling the estate of her husband, had actual notice of the existence of the claims sued for in this cause soon after she qualified as executrix and long before she disbursed the greater part of the assets. If she did not have actual notice of the precise amount of the plaintiff's claims she had notice that such claims existed and sufficient knowledge to put her on the enquiry as to the amount claimed.

S. C. Staton, states in his deposition taken in the cause, that he is one of the heirs of Mary Staton, deceased, and that his interest has been paid to him by Dr. James Stewart, and that he claims no interest in the fund in this suit. And Dr. James Stewart, whose deposition is also filed in this cause, states therein, that his wife is one of the heirs of Mary and James Staton, deceased; that the amount of his wife's interest as heir of said Mary, he thinks, was one thousand four hundred dollars or one thousand five hundred dollars; that this interest has been paid to him in part by canceling debts due from him for rents of land and the hire of slaves belonging to the dower of said Mary, and that the balance of his wife's claim or interest, he thinks was paid to him by Mrs. Vintroux; and that he claims nothing in this suit unless Mrs. Ward and Mrs. Thomas are not heirs of the estate. That the balance paid him by Mrs. Vintroux was about forty dollars.

The foregoing are all the facts in the record, which I deem it material to state in order to dispose of the questions presented to this Court for decision.

The first error assigned by the appellants is, that the court erred in overruling the defendants' demurrer to the plaintiff's bill, because the plaintiff had a complete remedy at law.

While the plaintiff might have sued at law on the ascertained claim of two thousand eight hundred dollars, still as there were other matters involved requiring accounts to be taken and the settlement of the estates of Mary Staton and L. E. Vintroux and, perhaps, of James Staton, it was certainly proper and much more convenient as well as to the interest of all the parties to have the whole matter settled in one suit. This could not have been done at law. I am, therefore, of opinion that there was no error in overruling the demurrer of the defendants for the cause assigned. But if the demurrants had assigned as ground of demurrer, that the administrator of James Staton and the heirs and distributees of said James and Mary Staton had not been made parties, I think, the demurrer should have been sustained and an order made requiring the plaintiff to amend his bill making said administrator, heirs and distributees parties, for reasons which I shall hereinafter state.

The second error assigned is, that the court improperly overruled the defense of the statue of limitations.

This suit is on an administrator's bond to recover against the obligors therein, principal and sureties, for an alleged breach of said bond.  The limitation against the sureties in such case is ten years from the return day of an execution on the plaintiff's claim if judgment has been obtained on his claim; and if not, then, it is ten years from the time the administrator shall have been ordered by a court, acting upon his account, to pay the claim of the plaintiff.  Code ch. 104 §§ 6 and 7.

The plaintiff's intestate in this cause was insane at the time the cause of action arose and so continued to her death; consequently, the statute did not commence to run until her administrator qualified, on July 25, 1859.  Code ch. 104 §§ 16 and 17.

This suit having been brought, on the 5th day of October, 1868, less than ten years from the date of the qualification of the plaintiff as administrator of his intestate, the same is not barred by the statute of limitations.  And it having been brought before the 1st day of April, 1869, the period from April 17, 1861, to March 1, 1865, must be excluded in computing said ten years.  Code ch. 136 § 4; *Pitzer* v. *Burns*, 7 W. Va. 63.

The third error assigned is, that the court improperly entered a decree for six thousand five hundred and ninety-nine dollars and sixty-eight cents against appellants and others. Under this assignment it is claimed that the bond of two thousand eight hundred dollars was the individual obligation of L. E. Vintroux; that its acceptance by J. J. Thompson, committee, without the knowledge or consent of the sureties on said Vintroux's administration bond, and being payable one day after date, tied the hands of said sureties for that period, and thereby absolved and released them from all liability.

In *Sayre* v. *King*, 17 W. Va. 562, this Court decided, that, if a bond or note, not negotiable, be given by a debtor to his creditor for an existing debt, such bond or note is *prima facie* not a conditional payment, but collateral security for the original debt, though *it may be proven* by either direct

or circumstantial evidence to have been intended by the parties to be an absolute or a conditional payment.  If such bond or note was received as collateral security, though it be payable at a future time, unless there was an agreement to postpone the right of action on the original debt *proven by other evidence* direct or circumstantial, the taking of such collateral security does not suspend the right of action on the original debt, and therefore does not discharge the sureties from their liability.  17 W. Va. 575.

The evidence in this suit, as before stated, does not rebut the *prima facie* presumption that the bond of two thousand eight hundred dollars was given as collateral security, but it all tends to prove that said bond was, by the agreement and understanding of the parties, intended simply as collateral security for so much of the liability of L. E. Vintroux, administrator, to the committee of Mary Staton.  The face of the bond and receipt, without regard to the direct testimony of Thompson, it seems to me, establish the fact satisfactorily, that it was not intended to discharge the original debt or change the security therefor by the giving of said bond and receipt.  The bond is signed, "L. E. Vintroux administrator of estate of James Staton, deceased," and the receipt states expressly, that it was given *for the bond* of the administrator which is fully described therein.  It is not here asserted that the mode of signing the bond in this instance made it the bond of the administrator  in his fiduciary capacity, for such was not the case; but it is claimed, simply, that the parties, by the writings exchanged, intended, on their face, to preserve the history of the transaction and thereby show its real character.

But even if it had been agreed between L. E. Vintroux as administrator and Thompson as committee, that said bond should be a satisfaction of the original debt, such an agreement would be disregarded in a court of equity.  Both parties were acting in a fiduciary capacity, and neither had any authority except that conferred upon him by his appointment and the law defining the duties of his trust.

And persons dealing with such fiduciary are charged with notice of the extent of his authority and will be held to be participants in any loss or *devastavit* resulting from his im-

proper acts. *Utterback* v. *Cooper*, 28 Gratt. 233; *Treasurers* v. *McDowell*, 26 Am. Dec. 166.

In *Stuart* v. *Abbott*, 9 Gratt. 252, one of three executors took the personal obligation of a party and released a lien on land as security for a debt due his testator, and it was held that such a release would not be enforced. In the opinion the court say: "Such a contract, if made, should receive no countenance in a court of equity." It was held to be in effect a contract to commit waste. 2 Wms. on Ex'ors 1104.

In the case at bar, it appears that the administrator of James Staton, deceased, as such administrator, was indebted to, or had in his hands tor, the widow of his intestate, who was then a lunatic, on account of her distributive share of said estate, two thousand eight hundred dollars, which had been due since January 1, 1855, and that on the 23d day of June, 1857, he informed the committee of said lunatic that he desired to settle, but not having the money to pay over he offered to give his bond tor said amount, which he did, and the committee says he acquiesced and took said bond. I do not believe from the testimony and circumstances, that this transaction was intended by the parties as a discharge of the original liability for which the administrator and his sureties were bound; but if it was so intended, it was a *devastavit* and an unauthorized act on the part of the committee suggested and participated in by the administrator of James Staton, and can not for a moment receive the countenance or approbation of a court of equity. The act was just as illegal on the part of the administrator as it was on the part of the committee, and the former is more culpable than the latter, because he received the whole benefit of it and procured it to be done. If the said bond had been subsequently paid it would have of course discharged the debt, but as it was not paid the beneficiaries of the estate of the lunatic have the right to repudiate the transaction and to recover the debt from the estate of the administrator and his sureties. And the giving of the said bond being thus improper and an act of bad faith as against the plaintiff, I do not think the fact of the administrator having been allowed credit for the amount in an *ex parte* settlement, which was not recorded until within less than four years prior to

the institution of this suit, can in any manner affect the transaction. I am of opinion, therefore, that the estate of L. E. Vintroux and the sureties on his administration bond are liable for the amount included in said bond of two thousand eight hundred dollars, or so much thereof as remains unpaid or otherwise unsatisfied.

And I am further of opinion, that the said bond of five hundred and four dollars, dated January 1, 1858, having been given for interest on said two thousand eight hundred dollars, must in like manner and for the same reasons, be held to be a charge against the estate of said administrator and his sureties, except in so far as the same has been paid or otherwise discharged. It seems from the record that one hundred and fifty dollars was paid on this bond on June 28, 1858; but it is not my purpose now to decide that such is the fact. The cause will have to be sent again to the circuit court and the matter can there be investigated and determined.

It is further claimed as error that the court decreed against the appellants for the whole amount of said bond of two thousand eight hundred dollars and interest and, also, for the balance of two hundred and thirty-six dollars and thirty-one cents found due from L. E. Vintroux as administrator of James Staton, deceased, in the settlement made by him January 1, 1858. I am of opinion that this claim is well taken.

It appears from the statement of the commissioner, to whom this cause was referred, and which statement has been hereinbefore given, that the heirs and distributees of James and Mary Staton, deceased, are Moses F. Ward, Mrs. Thomas, Mrs. O. L. Vintroux, Mrs. Dr. James Stewart and the children of James Staton sr., deceased. It is shown by the facts in this cause that Mrs. O. L. Vintroux, who is one of said distributees, has as administratrix of her husband's estate made herself personally, and her sureties on her executorial bond, if she has any, liable for the preferred claims sought to be recovered in this suit, by reason of her *devastavit* in paying unpreferred debts in full and paying nothing in the claims of the plaintiff. The assets which came into her hands, if properly administered, would have paid nearly fifty cents on the dollar of the debts of her testator.

She had ample notice of the plaintiff's preferred claim, as we have seen, and although she may have paid other debts in full to an amount largely in excess of the assets which came to her hands, yet for such debts paid in full she, in her executorial settlement, will not be entitled to credit for any sum beyond the *pro rata*, to which said debts would have been entitled to be paid if said assets had been properly administered. If her accounts are so settled there will appear to be in her hands a sum sufficient to pay, perhaps, the whole of the plaintiff's claim in this cause. And while such sum may not in fact be in her hands or recoverable from her by reason of her insolvency, still it is unjust that the appellants here should be required to pay to her, or to the plaintiff for her, a large sum as the sureties of her husband, when she by her *devastavit* of her husband's estate has made it greatly less able to satisfy the plaintiff's claim to the relief of said sureties. The amount due to her as distributee of the estates of James and Mary Staton should be ascertained and deducted from the amount sought to be recovered in this suit, at least to the extent of the assets, which came to her hands as executrix of her husband, would, if properly administered, have reduced said amount.

It further appears from the evidence in this cause, that Mrs. Dr. James Stewart, another distributee of the fund here sought to be recovered, has been paid off in full; and there is some evidence that S. C. Staton, another distributee, has assigned his claim to Dr. James Stewart and has, also been paid.

The balance of two hundred and thirty-six dollars and thirty-one cents found to be due from L. E. Vintroux as administrator of the estate of James Staton, deceased, could not have been properly included in the recovery in this suit without first having made the personal representatives of said James Staton a party to this cause. The balance thus appearing may have been retained by the administrator for the payment of debts of said estate or it may have been due to other distributees than the widow. It would seem probable that, as the administrator gave his bond to the committee of the widow for a sum certain, there was nothing further due her. At all events, it was improper to assume that she was

entitled to one third or any other part of said two hundred and thirty-six dollars and thirty-one cents in the absence of the personal representative of said estate.

I am of opinion that, for the errors hereinbefore indicated, the decree of the circuit court, rendered on the 6th day of May, 1880, should be reversed with costs to the appellants, and that this cause be remanded to said circuit court with directions to that court to permit the plaintiff to make the personal representative of the estate of James Staton, deceased, and also all the heirs and distributees of the said James and Mary Staton, parties defendants to this suit; that after said parties are before the court, then, proper accounts shall be directed and taken, and the true sum due to each of the distributees of said James and Mary Staton be ascertained, and the amount found to be due to O. L. Vintroux, to the extent hereinbefore indicated, be deducted from the amount sought to be recovered in this suit from the sureties of L. E. Vintroux as administrator of said James Staton; that whatever has been paid to Mrs. James Stewart or any other of said distributees which it shall be found proper to deduct from said liability of said sureties be also credited to them; and that such other and further proceedings be had in the cause in said court as are in accordance with the principles announced in this opinion and further according to the rules and practices of courts of equity.

THE OTHER JUDGES CONCURRED.

DECREE REVERSED.   CAUSE REMANDED.