# CHARLESTON.

## MARSHALL *v.* HALL.

Submitted September 6, 1901.    Decided March 29, 1902.

1. PURCHASE MONEY—*Lien Under Will—Priority.*

W. devised to H. "to him, his heirs and assigns," a farm described "he paying to my executor twelve thousand dollars in five equal annual payments, bearing interest from the date of my death, such payments to form part of my estate in the hands of my executor and to be disposed of as hereinafter provided," and giving H. one month from the date of the probate of the will in which to refuse in writing to take the farm, H. elected to take it. *Held:* That the twelve thousand dollars was purchase money and a lien upon the land and as such prior to all other liens or claims created upon the said land by Hall, as well as judgments recovered against him. (pp. 576, 577).

2. TRUST FUND—*Misappropriation—Lien Convertible.*

A legacy of three thousand dollars by the same will was bequeathed to H. to be held by him in trust, the interest to be paid to B. during his life and at his death the three thousand dollars to be paid to other parties named. R., the executor of W., having collected from H. nine thousand dollars of the purchase money, instead of requiring H. to pay the residue of three thousand dollars took from H. his receipt for that amount, being the amount of the trust legacy and treated it as the residue of the purchase money as paid by H. *Held:* A misappropriation of the trust fund and that the money not having been paid by H., the lien for the residue of the purchase money upon the land remained valid and enured to the benefit of the beneficiaries of the trust legacy. (p. 579).

From the Circuit Court, Jefferson County.

Suit of Ann P. Marshall's executors against John Hall, W. L. Wilson and Ed. Tearney. Judgment for plaintiff and defendants appeal.

*Affirmed in part. Reversed in part. Remanded.*

GEORGE BAYLOR and A. W. McDONALD, for appellants.

D. B. LUCAS, J. F. ENGLE, MOLLOHAN, McCLINTIC & MATHEWS and D. C. GALLAHER, for appellees.

McWHORTER, JUDGE:

John H. Hall purchased from the estate of Mrs. Ellen Waters a tract of two-hundred and thirty-five acres of land in Jefferson County, under the provisions of the will of said Ellen Waters, at the price fixed by the will, twelve thousand dollars, which will provided a legacy of three thousand dollars to said John H. Hall to be by him held in trust, to pay the interest accruing thereon to John L. Briscoe, the brother of the testator, during his life, and after the death of her said brother the said sum of three thousand dollars was to be paid to Julia Armstead, Bettie Miller and Julia Gallaher each the sum of five hundred dollars, and the residue of said sum to testator's sisters Juliet B. Miller, Elizabeth C. Hall, and Amelia F. Gallaher, equally to be divided between them share and share alike. To raise the money to pay for the farm the executor of the will borrowed for said Hall from Judge Marshall the sum of seven thousand dollars, to secure which Hall executed a deed of trust on the land; the executor allowed the said Hall to retain the three thousand dollars bequeathed to him as a trust fund by said will, to be held by him in trust for John L. Briscoe and others, and took Hall's receipt therefor. On the failure of Hall to pay off this trust deed George Johnson and Charles W. Ross, executors of Ann P. Marshall, and Charles W. Ross, as trustee, brought their suit in chancery in the circuit court of Jefferson County, and filed their bill at April Rules, 1893, convening the creditors of said Hall for the purpose of subjecting said land to the payment of his debts, in which suit said John L. Briscoe, and others, the beneficiaries of the three thousand dollar trust fund were not made parties. These parties on the 14th day of December, 1894, tendered their petition in said cause, setting up their claim for the three thousand dollars and praying that this resulting trust might be fully recognized and established by decree, and that all resulting and consequential relief might be granted, etc., to the filing of said petition the parties plaintiffs and defendants to said suit objected, which objection was sustained and the petition not allowed to be filed. Petitioners appealed from the de-

cree rejecting their petition, and by decree of this Court the said decree was reversed and the cause remanded for further proceedings to be had therein in accordance with the rules of equity. 42 W. Va. 641. On the 17th of February, 1897, Eugene Baker, sheriff committee, administrator of Juliet B. Miller and the other said petitioners, filed their petition, and amended petition making all the parties to said suit plaintiffs and defendants; parties defendants to said petition setting up their said claim for three thousand dollars and interest alleging that their resulting or implied trust is a lien upon the whole of the two-hundred and thirty-six acres and superior in dignity, first to all deeds of trust against said farm, secondly, to all judgments against said John H. Hall, and thirdly, to every other lien or charge against said property of whatever character or description, except so far as otherwise held by the Supreme Court of Appeals of this State in this case; that the deed of trust of plaintiff, Charles W. Ross, trustee, etc., was recorded April 1, 1881, and that said Ross, as such trustee, relinquished his lien on the eighty acres of the Briscoe tract in favor of one Thomas H. Bates, by deed exhibited with the bill and dated January 1, 1884, and averring that as to said eighty acres the said Ross must be taken to have received the benefit thereof as against the petitioners and as against them, the plaintiffs' debt audited against the remainder of the Briscoe tract, one hundred and fifty-six acres should be charged with the price of said eighty acres, and petitioners so pray, and averring further that the deed of trust to George Baylor in favor of W. L. Wilson as set out in the bill was recorded May 23, 1881, while the legal title to the Briscoe tract was outstanding in Ross, trustee, and, therefore, it conveys nothing but the equity of redemption and was subordinate therefore to the equity of petitioners upon the principle that *qui prior est in tempore potior est in jure,* and praying that it may be so adjudged, and averring that the same is true in regard to the other deeds of trust set out in the bill, and also over the lien of S. S. Dalgarn by virtue of the deed of trust to Frank Beckwith, dated October 10, 1893, for two hundred and forty-three dollars and seventy-seven cents for the same reason and for the further reason that this last conveyance was made *pendente lite* averring that the decree of sale of February 23, 1894, was and is virtually null and void as to the petitioners as also is the decree confirming the sale, and pray that the said decrees

be so held, and they charge that even if the sale should not be disturbed that said purchaser made his second payment of the 10th of August, 1895, after petitioners had tendered their petition to the court to be filed, which was done December 14, 1894, at which date all the parties appeared in answer to said petition and moved to reject it; hence said Dalgarn is a purchaser with notice of petitioners' claim and pray that it may be so adjudged and that the one hundred and fifty-six acres may be subjected in the hands of the purchaser, Dalgarn, to the payment of their debt, averring that plaintiff had notice of petitioners' equity when he brought this suit, and subsequently that it appeared on the face of the record that they were necessary parties to the suit and they, therefore aver that all the decrees entered in the cause are liable to be set aside and treated as null and void as to petitioners and pray that it may be so held and that their resulting trust be fully recognized and established by decree and relief be granted accordingly; that the cause be recommitted to a commissioner to ascertain and report how much of the purchase money remains undistributed and how much thereof is entitled, under the decision of the Supreme Court of Appeals in this cause, to be applied to the payment of the lien of petitioners, and for process, etc., and for general relief.

Frank Beckwith, trustee, filed his answer to said petition setting up the trust deed he represents and showing its recordation, denying all notice of any claim or equity on behalf of petitioners until the filing of their petition and charging *laches* on part of petitioners in asserting their claims and calling for strict proof of their claim. W. L. Wilson, Edward Tearney and George Baylor, trustees, filed their answer denying that the three thousand dollars is a lien upon the two hundred and thirty-six acres as a resulting trust or otherwise, or that they ever had notice of the facts set out in the petition until the filing thereof; that the farm devised by Mrs. Waters to John H. Hall originally contained two hundred and thirty-six acres, but averring that in June, 1884, the said Hall sold off eighty acres of said tract to Thomas H. Bates, and petitioners' lien, if their theory of the law be true, would equally attach to said eighty acres in the hands of Thomas H. Bates; that the claim audited in the cause in favor of Ann P. Marshall's executors has been fully paid and satisfied under the decrees in this cause, two thousand eight hundred and ninety-seven dollars and ninety-three cents under

decree of July, 1894, and the residue two thousand and three dollars and ninety-six cents under the decree of August, 1895, and same has been paid out and distributed under the will of the said Ann P. Marshall under and according to the laws of Maryland; that on the 23rd of May, 1881, said Hall borrowed from respondent Wilson two thousand dollars and secured the same by deed of trust to George Baylor, trustee, on the said tract of land devised to Hall, and on a tract of sixty-one and one-half acres purchased by Hall of Thomas Hite; that said last named tract had been sold in the cause and the proceeds, after paying the cost and expenses, viz: two thousand and sixty-five dollars and twenty-one cents, paid on this debt, and that on the balance of said debt, five hundred and forty-one dollars and eighty-four cents, there was paid under decree of August, 1895, one hundred and twenty-six dollars and fourteen cents arising from proceeds of Waters tract, leaving still due on the debt four-hundred and fifteen dollars and seventy cents, with interest from August, 1895; that on the 1st of March, 1886, Hall borrowed from Edward Tearney eight hundred dollars and secured same by deed of trust of that date to George Baylor, trustee, on the Waters tract, there being one hundred and fifty-nine acres, said eighty acres having been sold off to Bates and respondents deny that either Wilson, Tearney or Baylor, trustees at the time of said loan, had any notice of the claims of petitioners upon said tract of land, nor until the filing of their petition, and aver that John L. Briscoe, the beneficiary for life of the three thousand dollars bequeathed under the will has been a party to the cause and has audited in the commissioner's report filed February 12, 1894, a judgment obtained by him against Hall for interest accrued to him on said sum of three thousand dollars, and the same had been confirmed as the sixth lien upon the Waters tract, and that certainly Briscoe is bound by all the decrees in the cause. Respondents say that as early as March 8, 1883, petitioners on the showing in their petition were apprised by the letter of Charles W. Ross, exhibited with their petition, that Hall had received the sum of three thousand dollars in payment of the sum of twelve thousand dollars due by him to the estate of Ellen Waters, yet they have slept on their rights from that date to the filing of their petition and have by their negligence allowed innocent purchasers and creditors to acquire rights adverse to such claim, and now after fourteen years they

come in and ask the court to give them priority over innocent and diligent purchasers when it would be grossly inequitable to do so, and pray that the prayer of petitioners be not granted. S. S. Dalgarn filed his answer that he purchased the tract of land under decree of the 31st of July, 1894, paying therefor cash three thousand dollars and giving two bonds each two thousand and seventy-seven dollars and thirty cents, payable at one and two years respectively, with interest from date; that he paid one of said bonds on the ——— day of August, 1895; that he had not paid the other because notice was given him not to pay it until the questions raised in the petition were settled, but that before paying said bond in August, 1895, he had no notice of the claim set up in the petition, paying the same on demand of the special commissioner and according to the terms of the sale made; denied that there is any claim in the nature of a lien on the land as set out in the petition; that he is ready to pay the last bond given by him for the purchase money as the court may direct, and prays that the prayer of the petitioners be not granted.

The following "agreement of facts" is filed in the record: "It is admitted and agreed as facts in this cause that neither W. L. Wilson, Edgar Tearney or George Baylor, trustee in the deeds of trust from John H. Hall and wife to George Baylor, trustee, nor J. G. Hurst, Frank Beckwith, trustee, nor T. C. Green, trustee, under deed of trust to T. C. Green, trustee, made by John H. Hall and wife, had any actual notice of the facts set out in the petition or amended petition of Eugene Baker sheriff committee of Julia B. Miller, John L. Briscoe and others until the filing of said petition. Daniel B. Lucas, for petitioners, George Baylor, for Wilson, Tearney and self; Frank Beckwith, Hurst, Green, trustee and self and Miller."

On March 8, 1883, Charles W. Ross wrote from Frederick, Maryland, to Mrs. Amelia F. Gallaher, Waynesboro, Augusta County, Virginia, in reply to a letter of enquiry (apparently) from her in which he gives her a full statement of the transaction, his dealings with Mr. Hall, his writing of the will of Mrs. Waters, how he assisted Hall to raise the money and he says, "two thousand dollars Mr. Wilson raised for him on the small place he had and which Mr. W. received as trustee for Mrs. Asquith and receipted to me as executor for the same," and continuing says, "there remains three thousand dollars. I

did not require him to pay in cash for the reason that Mrs.
W. bequeathed him that amount as trustee for J. L. Briscoe,
and if he had paid me I would have had to pay it back, so I
took his receipt for that amount, less collateral tax of two and
one-half per cent. due State of Maryland. * * * I do not
know what the laws of West Virginia may be regulating the
rights of parties in reference to remainders and their relations
to trustees. In this State such parties can appeal to the courts
and require trustees to give bond for the faithful execution of
their trust, and I have no doubt but that similar proceedings
can be instituted in the courts of other states. I feel sure,
however, if you desire any information and will approach Mr.
John Hall in a manner not to affend that he will give you satis-
faction." Signed by Charles W. Ross. This letter is proven
to be genuine by Thomas Forman and by Ross himself. The
cause was heard on the 6th day of March, 1900, when the court
decided, "that the petitioners, Eugene Baker, sheriff commit-
tee, administrator of Julia B. Miller, John L. Briscoe, Juliet
H. Gallaher, Mrs. Ellen A. Darby, Mrs. Bettie Harrison and
Mrs. Julia W. Olmstead and Bettie F. Gassaway are entitled
to the relief prayed for in their petitions; that in pursuance of
the opinion of the Court of Appeals a resulting trust is de-
clared in their favor in the tract of land of one hundred and
fifty-nine acres, known as the 'Briscoe' tract, which was sold in
this cause on the 31st day of July, 1894, and which was pur-
chased by Stephen S. Dalgarn, which resulting trust according
to the commissioner's report aforesaid, amounted to three thou-
sand dollars principal at the date of said report with interest
on said sum from April 18, 1893, and an unpaid judgment for
interest prior to that date amounting to two hundred and forty-
nine dollars and thirty-five cents recovered by John L. Briscoe
against John H. Hall which is audited in class 6, among the
debts decreed against said John H. Hall in this cause, in Com-
missioner Moore's report of February 12, 1894, and interest on
said judgment from said date and cost of same with interest
and judgment is due to John L. Briscoe or to B. D. Gibson his
trustee. The court is further of opinion that the resulting
trust heretofore declared has equal dignity with the claim and
lien of Charles W. Ross, trustee of Ann P. Marshall, and now
her executor; and is superior in dignity and prior in lien to all
the judgments audited in the cause, except the judgment au-

dited in favor of John L. Briscoe for two hundred and forty-nine dollars and thirty-five cents which is of equal dignity being covered by the resulting trust.

And the court is further of the opinion that the several trustees and beneficiaries whose deeds of trust were executed subsequently to the 1st day of April, 1881, were purchasers severally of the equities of redemption, and do not come under the definition of purchasers for value without notice as defined by the Court of Appeals in its opinion, they never having acquired the legal title, and therefore the subsequent trusts are subordinated as inferior in dignity and priority to the resulting trust of the said petitioners," and providing further that the special commissioner collect the last payment of two thousand and seventy-seven dollars and fifty cents with interest from July 31, 1894, from S. S. Dalgarn, the purchaser of the Briscoe tract, and pay the same to J. F. Engle, who was appointed a special receiver for the purpose, to be held by him for the benefit of the beneficiaries under said resulting trust until the further order of the court. From this decree the defendants, William L. Wilson and Edward Tearney appealed and say it was error to hold that the sum of three thousand dollars named in the petition of Eugene Baker and others was superior in dignity and a prior lien to the deeds of trust in favor of William L. Wilson and Edward Tearney audited in commissioner Moore's report.

The appellees base their claim upon two clauses in the will of Ellen M. Waters which read as follows: "I give and bequeath to my cousin, John Hall, of Jefferson County, State of West Virginia, to him, his heirs and assigns, my farm, situated in Jefferson County, State of West Virginia, which I purchased in the year 1874, with funds belonging to my separate estate, of Edward Tearney, administrator of Thomas Briscoe, deceased, he paying to my executor twelve thousand dollars, in five annual payments, bearing interest from the date of my death, such payments to form part of my estate in the hands of my executor, and to be disposed of as hereinafter provided. But in case my said cousin, John Hall, refuses to take said farm at the valuation aforesaid, within one month from the probate of my will, such refusal to be in writing, signed by him, I then authorize and empower my executor to sell said farm, and direct and will that the proceeds of sale, together with other parts and

portions of my estate, shall be applied to the payment of my
debts, funeral expenses, legacies, pecuniary and residuary, as
hereinafter devised. * * * I give and bequeath to my
cousin, John Hall, of Jefferson County, State of West Virginia,
the sum of three thousand dollars in trust, to have and to hold
the same, and to pay the interest accruing thereon, to my
brother, John L. Briscoe, for and during his natural life, and
after the death of my said brother, I give, devise and bequeath
the said sum of three thousand dollars as follows: I give, de-
vise and bequeath to Julia Olmstead, Bettie Miller and Julia
Gallaher, each the sum of five hundred dollars, and the residue
of said sum I give, devise and bequeath the same to my sisters,
Julia B. Miller, Elizabeth C. Hall and Amelia F. Gallaher,
equally to be divided between them, share and share alike." It
will be observed that the testatrix devises to Hall the farm on
condition that he pay twelve thousand dollars to her executor.
He accepted the farm under the terms of the will, all the pur-
chase money being payable in the future and was a charge or
lien upon the land until fully paid by Hall. He borrowed
money to the amount of nine thousand dollars by giving trust
deeds to secure the payment thereof on the farm; the residue
of three thousand dollars never was paid. The only way in
which the conditions of the will could be complied with was by
the payment of the money by Hall. An attempt was made by
an arrangement between him and Ross, the executor, by simply
passing receipts for the sum of three thousand dollars. Ac-
cording to Ross' own statement he did not require Hall to pay
the three thousand dollars in cash but took Hall's receipt for
the same as though he had paid Hall the money under the sec-
ond clause mentioned of Mrs. Waters' will, which bequeathed
three thousand dollars to Hall in trust. This was not a pay-
ment of the money by Hall for the residue of the purchase
money of the farm under the will. *Hoge* v. *Vintroux,* 21 W.
Va. 1. There remained due from him the sum of three thou-
sand dollars and its accruing interest to the executor of the
estate as the residue of the original purchase money yet unpaid
to the estate. Wilson and Tearney, trust creditors, claimed
to be purchasers without notice. The language of the will
which was recorded in the county of Jefferson, under which
Hall took the land, showed upon its face that the twelve thou-
sand dollars purchase money was to be paid in the future and

was a charge or lien thereon. This was surely sufficient to put any purchaser upon enquiry as to whether this purchase-money had been paid. In *Burwell* v. *Fauber,* 21 Grat. 446, at page 463, Judge Moncure, in delivering the opinion of the court, says: "Purchasers are bound to use a due degree of caution in making their purchases, or they will not be entitled to protection. *Caveat emptor* is one of the best settled maxims of the law and applies exclusively to a purchaser. He must take care and make due enquiries, or he may not be a *bona fide* purchaser. He is bound, not only by actual, but also by constructive notice, which is the same in its effect as actual notice. He must look to the title papers under which he buys, and is charged with notice of all the facts appearing upon their face, or to the knowledge of which anything there appearing will conduct him. He has no right to shut his eyes or his ears to the inlet of information, and then say he is a *bona fide* purchaser without notice." *Jones* v. *Smith,* 1 Hare 43, 55. And in *Brush* v. *Ware,* 15 Pet. (U. S.) 93, it is held: "No principle is better established than that a purchaser must look to every part of the title which is essential to its validity." And it is there further said: "When a purchaser cannot make out his title but through a deed which leads to a fact, he will be affected with notice of that fact." And cites *Mertins* v. *Joliffe,* Amb. 311; *Moore* v. *Bennet,* 2 Ch. Ca. 246. And Justice McLean, in speaking for the whole court in *Brush* v. *Ware,* cited, says: "The law requires reasonable diligence in a purchaser to ascertain any defect of title. But when such defect is brought to his knowledge, no inconvenience will excuse him from the utmost scrutiny. He is a voluntary purchaser, and having notice of a fact which casts doubt upon the validity of his title, are the rights of innocent persons to be prejudiced by his negligence?" *Long* v. *Weller,* 29 Grat. 347. Justice Story in his first volume, Equity Jurisprudence, s. 400, says: "Generally it may be stated as a rule on this subject that where a purchaser cannot make out a title but by a deed which leads him to another fact, he shall be presumed to have knowledge of that fact. So the purchaser is in like manner supposed to have knowledge of the instrument under which the party with whom he contracts, as executor, or trustee, or appointee derives his power. Indeed the doctrine is still broader; for whatever is sufficient to put a party upon inquiry (that is, what-

ever has a reasonable certainty as to time, place, circumstances and person) is, in equity held to be good notice to bind him." In *Acer* v. *Wescott,* 1 Lansing (N. Y.) 193, it is held: "A purchaser or mortgagee of lands is presumed to have knowledge of every fact to which he is led by a deed forming a link in the chain of his title. And he does not in equity escape from such presumption because the fact to which he is referred is the existence of an equitable right and not a legal one." *Jumel* v. *Jumel,* 7 Paige (N. Y.) 591; *Wood* v. *Krebbs,* 30 Grat. 708; *Campbell* v. *Fetterman,* 20 W. Va. 398. Hall had no deed, he only held by virtue of the will of Mrs. Waters and the provisions of that will must of necessity put purchasers upon inquiry as to Hall's title. But it is contended by the appellants that the letter of Ross to Mrs. Gallaher of March 8, 1883, is evidence that Hall had paid the three thousand dollars. By that letter it is shown after informing her how the nine thousand dollars had been raised and paid to him, "there remains three thousand dollars—I did not require him to pay in cash, for the reason that Mrs. W. bequeathed him that amount as trustee for J. L. Briscoe and if he had paid me I would have had to pay it back, so I took his receipt for that amount less collateral tax of two and one-half per cent. due State of Maryland." So that it appears from the letter, which they claim as evidence of the payment, that it is therein stated in terms that he did not require him to pay it in cash, the only way he had a right to pay it, or the executor had a right to receive it. To pay it, or apply it on the price of the land charged to him in the will was a misappropriation of the trust fund and not having been actually paid in money the vendor's lien or the lien created by the will, which required its payment, remained a lien thereon for the three thousand dollars and its interest, notwithstanding the parties afterwards treated it as a resulting trust, and the lien enured to the beneficiaries of the three thousand dollar trust. It is insisted by appellants that the appellees were guilty of *laches* in lying quiet fifteen years and making no effort to collect their money; that Briscoe was a party to the suit, having filed his judgment against Hall in April, 1893; while it is contended by appellees that the question of *laches* and staleness of the claim was passed upon by this Court in ordering the filing of the petition.

On the 14th of December, 1894, John L. Briscoe and others

tendered. their petition in this cause setting up the claim of three thousand dollars as a resulting trust upon said farm in their favor, to the filing of which plaintiffs and defendants objected and on the 22nd day of July, 1895, the court sustained the objection to the filing of the petition and refused to file the same, from which decree of the court the petitioners appealed. This court reversed the decision of the court and ordered the petition filed. It is claimed now by the appellees that the objection to the filing of the petition was in the nature of, and equivalent to a demurrer which disposes of the question of *laches* as well as the statute of limitations. In Vol. I, Barton's Ch. Pr., page 85, quoting *Landsdale* v. *Smith,* 106 U. S. 391, the court holds: "The proper rule of pleading would seem to be that when the case stated by the bill appears to be one in which a court of equity will refuse its aid, the defendant should be permitted to resist it by demurrer. And as the *laches* of the complainant in asserting his claim is a bar in equity, if that objection is apparent on the bill itself, there can be no good reason for requiring a plea or answer to bring it to the notice of the court." And in *Jackson* v. *Hull,* 21 W. Va. 610, JUDGE SNYDER in delivering the opinion of the Court says: "It is now clearly the rule in equity that the statute of limitations, or objection in analogy to it, on the ground of *laches,* may be taken advantage of by demurrer as well as by plea." And the reason given for the change in the rule is "the abolition and disuse of special replication in equity practice." In *Van Winkle* v. *Blackford,* 33 W. Va. 573, JUDGE LUCAS, delivering the opinion of the Court, says, at page 584: "While it may be doubted whether the presumption of payment or the mere staleness of demand can be reached by demurrer to the bill, yet, when the bar is applicable by analogy to the statute and that appears in the bill, the defect may be taken advantage of by demurrer." And cites Story's Eq. Pl. 484, and notes; 1 Barton's Ch. Pr. 84; *Jackson* v. *Hull,* cited. And Barton, at page 85, says: "The rule that the defence of *laches* may be made by demurrer seems to be definitely settled by the same court (W. Va.) in the cases of *Paxton* v. *Paxton,* 38 W. Va. 616, (18 S. E. 765); *Thompson* ·v. *Whittaker Iron Co.,* 41 W. Va. 574, (23 S. E. 795). The weight of authorities, therefore, as well as of reason seems to be strongly against the doctrine established by the Virginia cases." Mr. Barton in his section on "Grounds of De-

murrer," under the Virginia decisions nowhere mentions either the statute of limitations or *laches* as being such grounds, and decidedly favors the rulings of our courts as "against the doctrine established by the Virginia cases." The decision of this case in 42 W. Va. is *res adjudacata* as to the question of *laches*. The interest on the legacy of three thousand dollars had been kept paid up to about July, 1891, all of which went to the holder of the life estate therein, and neither he nor the remainder-men in such legacy up to that time had cause of complaint. The suit was brought early in the year, 1893, and on December 14, 1894, the said legatees filed their petition in the cause. In the meantime suits had been brought and judgment recovered for interest accruing after the last payment of interest in 1891, so it would seem that petitioners could not be charged with *laches* and the court so held on demurrer. It is claimed by the appellants that if any charge by the will of Mrs. Waters, is made, it is on the proceeds of the sale of the farm and other parts and portions of either estate and this charge extends to all debts, funeral expenses and legacies. This might be true if the farm had been sold and proceeds disposed of as provided in the will in case Hall refused to take the farm, but Hall elected to take the farm under the provisions named in the will. It is also claimed that Ross, the executor, in his settlement reports the twelve thousand dollars as the proceeds of the farm and the whole of it as collected and disbursed. This fact does not appear from the record. The petitioners Eugene Baker, sheriff committee, Amelia F. Gallaher and others tendered their petition in this cause asking to be allowed to file the same and to have their rights adjudicated; parties then litigants in the cause objected to the filing of the petition and the court below sustained the objection and refused to allow it to be filed, from which order alone the former appeal was taken. There were no issues made up on the pleadings as to the rights of the petitioners as between themselves and Marshall, Wilson or any one else, and this Court was simply called upon to decide whether said petition should be filed or not, and it was distinctly so stated in the opinion, 42 W. Va. 641, and the court had no power or authority to adjudicate any questions between the petitioners and Marshall or anybody else as to the validity or priorities of their claims. Therefore, there is no *res adjudicata* in respect to the legacy of three

thousand dollars in this case except to the extent that petitioners Baker, Gallaher and others had such interest in the controversy that they were entitled to file their petition herein and litigate such questions. Until the decision of this Court on the filing of the petition, the petitioners were not parties to the suit and of course could not be bound by any decrees or orders made in the cause.

It is claimed by counsel for appellees that Hall, in June, 1884, having sold eighty acres of the Briscoe tract for six thousand dollars, and Ross trustee for Marshall in the deed of trust and having full notice of petitioners' claim, joined in the conveyance of the eighty acres to the purchaser Bates, as did also Wilson and Baylor, his trustee, thereby releasing their liens upon the said eighty acres, four thousand dollars of the purchase money being paid on the Marshall claim, that it was equivalent to a sale of the eighty acres by the trustee, and his *cestui que trust* should be held responsible for the whole of the six thousand dollars instead of only the four thousand dollars, which was credited on the Marshall debt. This position is correct only as respects the rights of the petitioners Baker, committee, Gallaher and others, but the Wilson estate has no equity to compel the Marshall estate to account for the two thousand dollars, being a part of the proceeds of the sale of the eighty acres of the land to Bates as Wilson and his trustee joined in the release, and it does not appear from the record that there was any arrangement or understanding in the execution of the deed and release to Bates that the whole proceeds of the eighty acres were to be applied to the Hall debt due Marshall. The Marshall trust debt and Wilson trust debt made by Hall should be subrogated to the lien or charge of Mrs. Waters created by the will, in the order in point of time in which the trust deeds were executed to Marshall and Wilson, but subordinate to the residue of three thousand dollars of the original charge or lien and its interest. Shelden on Sub., s. 19; *McClaskey* v. *O'Brien,* 16 W. Va. 791. The money in hand and directed to be collected by the special commissioners should be applied first to the payment of the said legacy of three thousand dollars, with interest; and if any balance remains thereafter it should be paid on the Wilson debt, and then upon the other claims according to their respective priorities. But if the fund in hand and so to be collected is insufficient to pay off the said three thousand dol-

lars and interest, the Wilson estate should be required to refund a sufficient amount, which it received from the proceeds of the sale of the Hall lands only derived from Mrs. Waters by the will, to pay off the balance of said three thousand dollars and interest, and in the event there is not a sufficient amount thus refunded to pay the same, then the Marshall estate should be decreed to pay in a sum sufficient to pay off the residue of the said sum of three thousand dollars and interest. For the reasons herein given the decree is reversed, except insofar as it orders the special commissioners to collect the residue of the purchase money remaining unpaid and except so far as it subordinates the judgments audited against Hall by the commissioner to the payment of the claims of petitioners Baker, Gallaher and others, to which extent the same is affirmed, and the costs of this appeal to be paid out of the fund to be collected in, and the cause is remanded to the circuit court of Jefferson County for further preceedings to be had therein, as indicated in this opinion, and according to the principles governing courts of equity.

*Affirmed in part. Reversed in part. Remanded.*