**Sharon HARPER, Committee for Roger E. Harper, Jr., Plaintiff,**

**v.**

**WALKER MANUFACTURING COMPANY, Tenneco, Inc., McNeil Corporation and Pentair, Inc., Defendants.**

**Civ. A. No. A:87–0800.**

United States District Court,
S.D. West Virginia,
Parkersburg Division.

Nov. 4, 1988.

Thomas W. Pettit and Virginia C. Colburn Vinson, Meek, Lewis & Pettit, L.C., Robert E. Vital, Huntington, W.Va., for plaintiff.

William A. Trainer, Davis, Bailey, Pfalzgraf & Hall, Parkersburg, W.Va., for defendants.

## MEMORANDUM OPINION AND ORDER

HADEN, Chief Judge.

Pending before the Court is the Defendants' motion to dismiss the above styled action. The Plaintiff has submitted a memorandum in opposition thereto, and the Defendant has since replied. The matter is now mature for this Court's consideration.

### I. *Statement of Facts*

The facts relevant to this motion are virtually without dispute and are as follows:

1. That in September of 1981, Plaintiff was hired by Kent Sutton as a mechanic's helper at Mr. Sutton's Sohio station in Loraine, Ohio.

2. That on March 5, 1983, Plaintiff was performing repair work on an automobile in the bay area of the Sohio service station.

3. That while Plaintiff was underneath the automobile he activated an end lift which rose up, crushing his head against the oil pan of the automobile.

4. That Plaintiff was flown to St. Joseph's Hospital in Loraine, Ohio, where he was diagnosed as having, among other conditions, crushing fractures to the frontal portion of the cranium, to orbital bones of both eyes, and to the facial bones with both bilateral torn optic nerves and severe brain lacerations.

5. That after being stabilized, Plaintiff was transferred to Cuyahoga County Hospital in Cleveland, Ohio, where he underwent surgical procedures, including exploration and debridgment of the left frontal cranium bone, removal of a portion of the left frontal lobe of the brain, and removal of the left eye.

6. That the Plaintiff remained hospitalized at various facilities until April 20, 1984, at which time he was allowed to return to his home under the constant care and supervision of his mother, Sharon Harper.

7. That on July 17, 1986, Sharon Harper was appointed as Committee for the Plaintiff by the County Commission of Mason County, West Virginia.

8. That on July 15, 1987, Sharon Harper filed the complaint in this action on behalf of the Plaintiff.

9. That on August 22, 1988, Defendant moved to dismiss this action on the ground that Plaintiff's complaint was filed more than four years after the accident occurred and thus time-barred by the applicable statute of limitations.

### II. *Discussion*

The parties agree that West Virginia law governs with respect to the appropriate statute of limitations. *Tice v. E.I. duPont de Nemours & Co.*, 144 W.Va. 24, 106 S.E.2d 107 (1958). The parties further agree, pursuant to *W.Va. Code*, § 55-2-12, that the Plaintiff normally would have two years within which to file an action to recover for personal injuries. The dispute concerns the application of the savings clause provided in *W.Va. Code*, § 55-2-15, which provides:

"If any person to whom the right accrues to bring any such personal action, suit or *scire facias* or any such bill to repeal a grant, shall be, at the time the same accrues, an infant or insane, the same may brought within the like number of years after his becoming of full age or sane that is allowed to a person having no such impediment to bring the same after the right accrues, or after such acknowledgement as is mentioned in section eight [§ 55-2-8] of this article, except that it shall in no case be brought after twenty years from the time when the right accrues."

Examination of this provision indicates that it operates to toll the statute of limitations for an insane person until such person regains mental competency or until twenty years have passed from the time the cause of action accrued. To have standing to invoke this provision, the person must be "insane" at the time the cause of action arose. The United States Court of Appeals for the Fourth Circuit has recently handed down a decision defining the word "insane" as appears in the savings clause, *W.Va. Code*, § 55-2-15. *Cobb v. Nizami*, 851 F.2d 730, 732 (4th Cir.1988):

"Although there has been no definitive interpretation of section 55–2–15 by the West Virginia Supreme Court of Appeals, the term 'insane' as used in similar statutes has been held by other courts to mean 'such a condition of mental derangement as actually to bar the sufferer from comprehending rights which he is otherwise bound to know. Stated another way, "insane" or of "unsound mind" … means a condition of mental derangement which renders the sufferer incapable of caring for his property, of transacting business, of understanding the nature and effect of his acts, and of comprehending his legal rights and liabilities.' " (Citations omitted).

In the instant case, neither party disputes that the Plaintiff was mentally incompetent subsequent to the accident, and has remained so up to and including the present time. Although the Plaintiff has miraculously regained the ability to perform some daily functions, he remains incapable of caring for himself, his property, or of transacting business. Therefore, it is clear that Plaintiff's level of incompetency falls within the definition of "insane" as defined by the Fourth Circuit, thereby providing him standing to invoke the provisions of the savings clause.

The second portion of the savings clause provides the duration for which the statute of limitations will be tolled. This portion of 55–2–15 provides that the applicable statute of limitations will remain tolled until such person regains mental competency or until twenty years have passed from the time the cause of action accrued. This Court had occasion to interpret this portion of the savings clause in *Dearing v. Dearing,* 646 F.Supp. 903 (S.D.W.Va.1986).

In *Dearing,* this Court acknowledged the merit of the defendant's argument that, for the purposes of the savings clause, a disability is removed upon the appointment of a committee to handle the incompetent's affairs. The logic underlying this argument derives from the West Virginia court's recognition "that it is not only the legal right, but it is the legal duty, of a committee to sue for damages done to the

estate of the incompetent." *Id.* at 911, *citing Johnson v. Chapman,* 43 W.Va. 639, 28 S.E. 744 (1897). The Court thus concluded that it was unnecessary to continue to toll the statute of limitations indefinitely subsequent to the appointment of a committee. The Court, however, stated that the statute of limitations is not automatically activated upon the committee's appointment. Rather, the Court chose to adopt an objective standard focusing on the reasonableness and diligence of the committee in discovering the wrong. *Id.*

■ In the present case, the Defendant has seized upon the reasonableness language used in *Dearing* to challenge the diligence of Sharon Harper in bringing this action more than four years after the accident occurred. The Defendant argues that Ms. Harper knew of the injury from the date of the accident, knew of the involvement of the end lift, knew that the Plaintiff would never become competent, and handled his affairs from the date of the accident to the present. Based on these uncontested allegations, Defendant argues that *Dearing* should be extended to preclude the savings clause from tolling the statute of limitations in the present case.

The Court, however, rejects Defendant's invitation to extend *Dearing* beyond its intended meaning. The Court notes that the basic premise upon which *Dearing* was decided was the legal significance of the appointment of a committee to handle the incompetent's affairs; in this case, Sharon Harper's appointment on July 17, 1986. Prior to such appointment Ms. Harper could only sue on behalf of the Plaintiff as a next friend. The next friend status, however, does not carry with it the legal duty to sue on behalf of the incompetent. Rather, it provides incompetents and infants a means through which to access the judicial system. Being appointed as committee, on the other hand, obligated Ms. Harper to use reasonable diligence to discover wrongs done to the Plaintiff, and to sue for damages done to the Plaintiff's estate. Unquestionably, Ms. Harper was aware of the details of the accident which injured Plaintiff at the time of her appointment,

thus the tolling effect of the savings clause was terminated on this date. In accordance with her obligation as committee, Ms. Harper filed this action less than one year after her appointment.

 The Defendants now challenge the timeliness of Ms. Harper's appointment as committee for the Plaintiff. However, in doing so, they fail to cite any authority which would impose a time limit for one to come forward and have himself or herself appointed as committee for an incompetent. The Court, after considering Article 11, Chapter 27 of the West Virginia Code, is satisfied that there is none. In fact, the policy behind *W.Va. Code*, § 55–2–15, which protects an incompetent's cause of action for up to twenty years after the same arose, leads the Court to the opposite conclusion.

### III. *Conclusion*

For the foregoing reasons, the Court concludes that the action brought by Sharon Harper on behalf of the Plaintiff was timely filed. Accordingly, Defendants' motion to dismiss is denied.