700 S.E.2d 317 (2010)
Annie MACK-EVANS, as Personal Representative of the Estate of Mamie Mack, Plaintiff Below, Appellant
v.
HILLTOP HEALTHCARE CENTER, INC., d/b/a Hilltop Center, a/k/a Hilltop Healthcare and Rehabilitation Center; Genesis Healthcare Corporation; Genesis Eldercare Corporation; Genesis Health Ventures of West Virginia, LP; Genesis Eldercare Network Services, Inc.; Genesis Eldercare Management Services, Inc.; Genesis Eldercare Rehabilitation Services, Inc.; Genesis Eldercare Staffing Services, Inc.; Genesis Eldercare Hospitality Services, Inc.; and Oak Hill Hospital Corporation, d/b/a Plateau Medical Center, Defendants Below, Appellees.
No. 35338.
Supreme Court of Appeals of West Virginia.
Submitted September 7, 2010.
Decided September 16, 2010.
*319 Harry F. Bell, Jr., Andrew L. Paternostro, Robert W. Absten, The Bell Law Firm, for Appellant.
Amy L. Rothman, W.E. Sam Fox, II, Briana J. Marino, Flaherty Sensabaugh Bonasso, Charleston, WV, for Appellee, Oak Hill Hospital.
DAVIS, Chief Justice:
This appeal was brought by Annie Mack-Evans, as personal representative of the estate of Mamie Mack, appellant/plaintiff below (hereinafter referred to as "Ms. Evans"), from an order of the Circuit Court of Fayette County granting summary judgment in favor of Oak Hill Hospital Corporation, appellee/defendant below (hereinafter "the Hospital"). The sole issue presented in this appeal is whether the circuit court was correct in finding that the statute of limitations had expired on the wrongful death and personal injury causes of action brought by Ms. Evans *320 against the Hospital. After a careful consideration of the briefs, listening to the arguments of the parties, and a review of the record submitted on appeal, we affirm.

I.

FACTUAL AND PROCEDURAL HISTORY
On January 28, 2004, Ms. Evans' eighty-six year old mother, Mamie Mack (hereinafter referred to as "Ms. Mack"), was admitted to the Hospital to undergo hip replacement surgery. The surgery took place on January 29, 2004. Immediately following the surgery, Ms. Evans visited Ms. Mack and found her tired and semiconscious. The next day, on January 30, 2004, the hospital contacted Ms. Evans by telephone and informed her that Ms. Mack could not be awakened, although she was alive, and that the family should prepare for a funeral.[1] At some point after the telephone conversation, Ms. Evans contacted a lawyer because she believed someone at the Hospital did something wrong in treating her mother. The lawyer that Ms. Evans contacted told her that "there's nothing you can do unless your mom were to die."
On February 19, 2004, Ms. Mack was discharged from the Hospital and transferred to a nursing home facility called Hilltop Health Care Center.[2] On or about July 23, 2004, Ms. Mack was transferred to another nursing home facility called Ansted Center. On August 5, 2004, Ms. Mack was returned to the Hospital. Ms. Mack died while at the Hospital on August 9, 2004.[3]
On August 20, 2004, Ms. Evans was appointed the personal representative of her mother's estate. On August 16, 2006, Ms. Evans mailed a Notice of Claim to the Hospital.[4] Ms. Evans mailed a Screening Certificate of Merit to the Hospital on October 12, 2006.[5] On November 17, 2006, Ms. Evans filed a complaint against the Hospital. The complaint against the Hospital alleged personal injury and wrongful death theories of liability.[6]
In March 2009, the Hospital filed a motion for summary judgment. The motion was based upon the argument that the claims against the Hospital were barred by the statute of limitations. Ms. Evans filed a response to the summary judgment motion. By order entered May 5, 2009, the circuit court granted the Hospital's motion for summary judgment. This appeal followed.

II.

STANDARD OF REVIEW
In this case, we are called upon to determine whether the circuit court committed error in granting summary judgment to the Hospital. Our standard of review concerning summary judgment is well settled. Upon appeal, "[a] circuit court's entry of summary judgment is reviewed de novo." Syllabus point 1, Painter v. Peavy, 192 W.Va. 189, 451 S.E.2d 755 (1994). In conducting a de novo review, we are guided by Rule 56 of *321 the West Virginia Rules of Civil Procedure, which provides that summary judgment is proper where the record demonstrates "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." W. Va. R. Civ. P. 56(c). Our case law also has made clear that "[a] motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law." Syl. pt. 3, Aetna Cas. & Sur. Co. v. Federal Ins. Co. of New York, 148 W.Va. 160, 133 S.E.2d 770 (1963). Accord Syl. pt. 2, Jackson v. Putnam County Bd. of Educ., 221 W.Va. 170, 653 S.E.2d 632 (2007); Syl. pt. 1, Mueller v. American Elec. Power Energy Servs., Inc., 214 W.Va. 390, 589 S.E.2d 532 (2003). In other words, "[t]he circuit court's function at the summary judgment stage is not to weigh the evidence and determine the truth of the matter, but is to determine whether there is a genuine issue for trial." Syl. pt. 3, Painter, 192 W.Va. 189, 451 S.E.2d 755.
With these standard of review principles in mind, we proceed to address the summary judgment ruling of the circuit court.

III.

DISCUSSION
In this proceeding, the circuit court found that the statute of limitations had expired on Ms. Evans' medical malpractice claims for personal injury[7] and wrongful death. The circuit court found, and the parties do not dispute, that a two-year statute of limitations applied to both causes of action.[8] The circuit court further found that the statute of limitations began to run on both causes of action on the date of Ms. Mack's death, August 9, 2004, and expired on August 9, 2006. It also was determined by the circuit court that Ms. Evans did not mail a Notice of Claim until August 16, 2006, after the statute of limitations had expired.[9] Finally, *322 the circuit court concluded that the discovery rule did not toll the statute of limitations for either cause of action.
Here, Ms. Mack has set out separate arguments that challenge the circuit court's summary judgment decision. We will address each argument separately.
(1) Summary judgment on the wrongful death claim. Ms. Evans contends that the statute of limitations was tolled on the wrongful death claim until she discovered the causal connection between the Hospital's alleged negligence and Ms. Mack's death. This Court recently has set out the procedure that is to be followed in determining whether the statute of limitations has run on a claim:
A five-step analysis should be applied to determine whether a cause of action is time-barred. First, the court should identify the applicable statute of limitation for each cause of action. Second, the court (or, if questions of material fact exist, the jury) should identify when the requisite elements of the cause of action occurred. Third, the discovery rule should be applied to determine when the statute of limitation began to run by determining when the plaintiff knew, or by the exercise of reasonable diligence should have known, of the elements of a possible cause of action, as set forth in Syllabus Point 4 of Gaither v. City Hosp., Inc., 199 W.Va. 706, 487 S.E.2d 901 (1997). Fourth, if the plaintiff is not entitled to the benefit of the discovery rule, then determine whether the defendant fraudulently concealed facts that prevented the plaintiff from discovering or pursuing the cause of action. Whenever a plaintiff is able to show that the defendant fraudulently concealed facts which prevented the plaintiff from discovering or pursuing the potential cause of action, the statute of limitation is tolled. And fifth, the court or the jury should determine if the statute of limitation period was arrested by some other tolling doctrine. Only the first step is purely a question of law; the resolution of steps two through five will generally involve questions of material fact that will need to be resolved by the trier of fact.
Syl. pt. 5, Dunn v. Rockwell, 225 W.Va. 43, 689 S.E.2d 255 (2009). With respect to the discovery rule, we held in Gaither:
In tort actions, unless there is a clear statutory prohibition to its application, under the discovery rule the statute of limitations begins to run when the plaintiff knows, or by the exercise of reasonable diligence, should know (1) that the plaintiff has been injured, (2) the identity of the entity who owed the plaintiff a duty to act with due care, and who may have engaged in conduct that breached that duty, and (3) that the conduct of that entity has a causal relation to the injury.
Syl. pt. 4, Gaither, 199 W.Va. 706, 487 S.E.2d 901.
In the instant proceeding, Ms. Evans argues that she "could not have known that [the Hospital's] negligence caused or contributed to her mother's death until she was appointed Administrator of her mother's estate on August 20, 2004[,] and had access to her mother's medical records." In other words, Ms. Evans relies on the third Gaither discovery factor as dispositive. In support of this contention, Ms. Evans relies principally upon the decision in Bradshaw v. Soulsby, 210 W.Va. 682, 558 S.E.2d 681 (2001).
In Bradshaw, the plaintiff filed a wrongful death action against several health care providers. The plaintiff alleged that the defendants were negligent in prescribing narcotic drugs to the decedent, her husband. The plaintiff also alleged that the decedent died as a result of an overdose of the narcotics prescribed by the defendants. The defendants filed a motion to dismiss the action based upon the running of the statute of limitations.[10] The plaintiff contended that the action was timely filed because she did not discover the cause of the decedent's death until an autopsy was performed, which revealed that the decedent overdosed on narcotics. Consequently, the plaintiff contended that the discovery rule applied and that the statute of limitations did not begin to run until the date she obtained the autopsy report. *323 The circuit court, relying on prior precedent of this Court, held that the discovery rule did not apply to a wrongful death cause of action. The circuit court therefore dismissed the action.
On appeal, this Court rejected the circuit court's determination that the discovery rule did not apply to a wrongful death action. In doing so, Bradshaw set out the following principles of law in Syllabus points 7 and 8:
7. The discovery rule, as set forth in Gaither v. City Hospital, 199 W.Va. 706, 487 S.E.2d 901 (1997), applies to actions arising under the wrongful death act. To the extent that Miller v. Romero, 186 W.Va. 523, 413 S.E.2d 178 (1991) conflicts with this holding, it is overruled.
8. In a wrongful death action, under the discovery rule, the statute of limitation contained in W. Va.Code, 55-7-6(d) [1992] begins to run when the decedent's representative knows or by the exercise of reasonable diligence should know (1) that the decedent has died; (2) that the death was the result of a wrongful act, neglect, or default; (3) the identity of the person or entity who owed the decedent a duty to act with due care and who may have engaged in conduct that breached that duty; and (4) that the wrongful act, neglect or default of that person or entity has a causal relation to the decedent's death.
210 W.Va. 682, 558 S.E.2d 681.
We find Ms. Evans' reliance on Bradshaw to be misplaced. The critical factor in Bradshaw was that, at the time of the decedent's death, the plaintiff had no reason to suspect that the decedent died as a result of medical negligence. The plaintiff in Bradshaw did not learn of a connection between the decedent's death and the defendants until an autopsy revealed that the decedent died from an overdose of drugs that had been prescribed for him by the defendants. In the case sub judice, the record is clear. Prior to Ms. Mack's death, Ms. Evans believed that the Hospital was negligent in its treatment of Ms. Mack. This belief led Ms. Evans to consult with an attorney to find out what she could do regarding the perceived negligent treatment. The attorney informed Ms. Evans that she had to wait until Ms. Mack died before she could take any legal action. Ms. Evans provided testimony on these issues during her deposition as follows:
Q. Do you recall anything else about that conversation with the nurse over the phone?
A. No, I was livid with her, so I can't I really don't remember. I mean the main thing she told me, my momprepare for a funeral and she couldn't tell me why or what happened between then and now. And so I don't know, but then they did tell us that she had not had a stroke. I'm like, "Well, what happened?" And no one could tell us what happened. Before we left for theat some point, I don't know if it was before that morning or when, but I did contact a lawyer to find out about them over sedating my mom, the negligence there and them over sedating her because that was the only thing that we could think of as to why she wasn't waking up, that everything else was fine, but she's not waking up after they sedated her and it was like it just didn't make sense.
Q. So at that point when you contacted the lawyer and you used the word "negligence"
A. Yes.
Q. You knew something
A. I knew something was wrong. I mean this to me just didn't make sense. And I'm like I just couldn't think that she wasmy mom didn't really weigh all that much. I just couldn't think that they that was the only way for them to handle the situation.
Q. So you did think at that point maybe somebody at the hospital had done something wrong?
A. Yes
In spite of Ms. Evans' belief that the Hospital was negligent in treating Ms. Mack prior to her death, Ms. Evans now contends that she was not aware of what caused Ms. Mack's death until after she was appointed administrator of the estate and obtained the medical records. In contrast, the Hospital contends that Ms. Evans' reliance upon receipt *324 of the medical records is disingenuous. The Hospital asserts that a request for Ms. Mack's medical records was not made until July 25, 2006, and that the records were not turned over until August 18, 2006, which was two days after the Notice of Claim was filed on August 16, 2006.[11] Moreover, Ms. Evans has not alleged the discovery of any new facts after Ms. Mack's death but prior to mailing the Notice of Claim. Under this set of facts, we agree with the Hospital that Ms. Evans did not rely upon the medical records in order to commence the wrongful death action against the Hospital. At the time of Ms. Mack's death, Ms. Evans had reasonable cause to believe that conduct by the Hospital may have caused Ms. Mack's death. See Legg v. Rashid, 222 W.Va. 169, 175-76, 663 S.E.2d 623, 629-30 (2008) ("[W]e explained that `once a [plaintiff] is aware, or should reasonably have become aware, that medical treatment by a particular party has caused [harm], th[e] statute begins.' We further recognized that `in some circumstances causal relationships are so well established that we cannot excuse a plaintiff who pleads ignorance.' Also, . . . we explained that `the statute of limitations will begin to run once the extraordinary result is known to the plaintiff even though he may not be aware of the precise act of malpractice.'" (quoting Gaither v. City Hosp., Inc., 199 W.Va. 706, 487 S.E.2d 901 (1997))).
In view of Ms. Evans' deposition testimony, we agree with the circuit court that the discovery rule did not toll the statute of limitations on the wrongful death claim.[12] The statute of limitations began to run on the wrongful death claim on the date of Ms. Mack's death, August 9, 2004. At the time that Ms. Evans mailed her Notice of Claim, August 16, 2006, the two-year statute of limitations had expired on the wrongful death claim. Consequently, the trial court was correct in granting summary judgment to the Hospital on that claim.
(2) Summary judgment on the personal injury claim. Ms. Evans argued below, and in this appeal, that Ms. Mack was "insane" prior to her death, because she never fully regained consciousness after the hip replacement surgery.[13] Consequently, Ms. Evans contends that the statute of limitations on her personal injury claim was tolled during the period of insanity under W. Va.Code § 55-2-15 (1923) (Repl.Vol.2008).[14] The trial court apparently agreed with Ms. Evans and held that the statute of limitations on the personal injury claim began to run on the date of Ms. Mack's death.[15] The record in *325 this case supports the circuit court's implicit finding that, prior to her death, Ms. Mack was under a mental disability within the meaning of W. Va.Code § 55-2-15.[16]
In this appeal, Ms. Evans contends that the statute of limitations did not begin to run on the personal injury claim on the date of Ms. Mack's death. Ms. Evans argues that the statute of limitations on the personal injury claim did not begin to run until she was appointed administrator of Ms. Mack's estate. To support this argument Ms. Evans relies upon the decision in Hoge v. Vintroux, 21 W.Va. 1 (1882).[17]
In Hoge, the administrator of the estate of a decedent, Mary Staton, commenced an equitable proceeding to recover money owed to Mrs. Staton's estate. It appears that Mrs. Staton was adjudged legally insane a few years after the death of her husband and that she was insane at the time of her death. A committee was appointed to handle Mrs. Staton's affairs while she was alive. After a committee was appointed to represent Mrs. Staton, the administrator of her husband's estate executed a bond with Mrs. Staton's committee, which allowed the administrator to withhold $2,800 from her husband's estate, but which she was entitled to receive. After Mrs. Staton died, her administrator brought an equitable proceeding to recover the money owed to her estate by her husband's administrator and the bond sureties.[18] The defendants in the proceeding filed motions to dismiss the case because of the absence of indispensable parties and because the action was barred by the statute of limitations. The trial court denied the motions. A judgment was ultimately returned in favor of the plaintiff. The defendants appealed.
The defendants in Hoge argued that the ten-year statute of limitations that was applicable to the bond proceeding had expired prior to the case being filed. This Court recognized that, at the time the cause of action accrued, Ms. Staton was insane. As a consequence of such insanity, the Court in Hoge held that the action was timely filed:
The plaintiff's intestate in this cause was insane at the time the cause of action arose and so continued to her death; consequently, the statute did not commence to run until her administrator qualified, on July 25, 1859.
This suit having been brought, on the 5th day of October, 1868, less than ten years from the date of the qualification of the plaintiff as administrator of his intestate, the same is not barred by the statute of limitations.
Hoge, 21 W.Va. at 10.[19] The decision in Hoge is inapplicable to the facts of this case.
As previously mentioned, Ms. Evans brought her personal injury claim under W. Va.Code § 55-7-8a. It is this statute that controls the running of the statute of limitations and not the decision in Hoge. With respect to the running of the statute of limitations, the following is provided by the statute:
If the injured party dies before having begun any such action and it is not at the time of his death barred by the applicable statute of limitations. . . , such action may be begun by the personal representative of *326 the injured party against the wrongdoer. . . . Any such action shall be instituted within the same period of time that would have been applicable had the injured party not died.
W. Va.Code § 55-7-8a(c). This Court has not previously had an occasion to address the application of W. Va.Code § 55-7-8a(c). We have held that "[t]he primary object in construing a statute is to ascertain and give effect to the intent of the Legislature." Syl. pt. 1, Smith v. State Workmen's Comp. Comm'r, 159 W.Va. 108, 219 S.E.2d 361 (1975). However, this Court's authority to construe a statute is limited. "When a statute is clear and unambiguous and the legislative intent is plain, the statute should not be interpreted by the courts, and in such case it is the duty of the courts not to construe but to apply the statute." Syl. pt. 5, State v. General Daniel Morgan Post No. 548, Veterans of Foreign Wars, 144 W.Va. 137, 107 S.E.2d 353 (1959). See also Syl. pt. 1, Ohio County Comm'n v. Manchin, 171 W.Va. 552, 301 S.E.2d 183 (1983) ("Judicial interpretation of a statute is warranted only if the statute is ambiguous and the initial step in such interpretative inquiry is to ascertain the legislative intent."). We do not find, under the facts presented by this case, that W. Va.Code § 55-7-8a(c) is ambiguous.
Under W. Va.Code § 55-7-8a(c) the statute of limitations begins to run when a person sustains an injury. The statute allows a personal representative to initiate an action only if the statute of limitations has not run. Nowhere in this statute does it indicate that the statute of limitations is tolled pending appointment of a representative. In fact, the statute of limitations could actually run on a claim before an injured person dies. See Syl. pt. 1, Handy v. Smith's Adm'r, 30 W.Va. 195, 3 S.E. 604 (1887) ("When an action has accrued to a party capable of suing against a party who may be sued, the statute of limitations begins to run, unless this be prevented by the case coming within some exception to the statute; and after it has begun to run its running is not suspended because of the subsequent death of either of the parties, or because of the lapse of time before either has a personal representative."). Insofar as W. Va.Code § 55-7-8a(c) does not expressly nor implicitly toll the statute of limitations until appointment of a representative, we will not mandate such a tolling period.
Even though W. Va.Code § 55-7-8a(c) does not toll the statute of limitations for the purpose of appointing a representative of a decedent's estate, the statute is impacted by the mental disability tolling provisions under W. Va.Code § 55-2-15. That is, and we so hold, the statute of limitations for a personal injury claim brought under the authority of W. Va.Code § 55-7-8a(c) (1959) (Repl.Vol.2008), is tolled during the period of a mental disability as defined by W. Va.Code § 55-2-15 (1923) (Repl.Vol.2008). In the event the injured person dies before the mental disability ends, the statute of limitations begins to run on the date of the injured person's death.
We find support for our holding in the case of Martin v. Naik, 43 Kan.App.2d 591, 228 P.3d 1092 (2010). In Martin, a medical malpractice wrongful death claim and a personal injury claim were brought against health care providers by the personal representative of a decedent's estate. The decedent in Martin went into a coma while being treated at a hospital. The decedent died without ever recovering from the coma. The wrongful death and personal injury claims were filed against the health care providers two-years after the death of the decedent. A trial court dismissed the action on the grounds that the two-year statute of limitations began to run on the date the decedent went into a coma, not the date of his death. On appeal, the appellate court reversed.
The appellate court in Martin, addressing the issue of when the statute of limitations began to run on the personal injury claim, found that the decedent was incapacitated when the injury occurred and died before the incapacitation terminated. Consequently, Martin held that the two-year statute of limitations did not begin to run until the decedent died:
[B]ecause [the decedent] could not reasonably ascertain the fact of his injury, his medical malpractice claim . . . did not accrue so as to start the statute of limitations *327 clock running until his death, so the 2-year limitation period . . . did not commence to run at any time during the period of [decedent's] incapacity.
Martin, 228 P.3d at 1099-1100. See also Roberson v. Teel, 20 Ariz.App. 439, 513 P.2d 977, 988 (1973) ("The question thus presented. . . is when does this statute of limitations begin to run as to an incompetent who dies without being restored to competency? We hold the rule to be that where a statute of limitation is tolled because of incompetency, the tolling of the statute ends upon the death of the incompetent. Marvin Teel died on February 6, 1969, at which time the tolling of the running of the one-year limitation . . . ended."); Triplett v. Williams, 269 Cal. App.2d 135, 74 Cal.Rptr. 594, 596 (1969) ("[D]uring whatever time Mrs. Hoffman was of unsound mind, the statute was tolled. Upon her death on November 1, 1958, however, the tolling of the statute ended. This date is so far removed from the commencement of the action as to preclude the prosecution of the cause by reason of the pleading of the statute of limitations.").
In the instant proceeding, the statute of limitations did not begin to run on the date of Ms. Mack's alleged injury because the trial court implicitly found that W. Va.Code § 55-2-15 tolled the statute of limitations while Ms. Mack was under a mental disability. That mental disability ended when Ms. Mack died on August 9, 2004. Therefore, the statute of limitations began to run on the date of her death. At the time that Ms. Evans mailed her Notice of Claim, August 16, 2006, the two-year statute of limitations had expired on the personal injury claim. Consequently, the trial court was correct in granting summary judgment to the Hospital on the personal injury claim.

IV.

CONCLUSION
We affirm the circuit court's order granting summary judgment, on May 5, 2009, in favor of the Hospital.
Affirmed.
Justice WORKMAN concurs, in part and dissents, in part and reserves the right to file a separate opinion.
WORKMAN, Justice, concurring, in part, and dissenting, in part:
"`The question of when plaintiff knows or in the exercise of reasonable diligence has reason to know of medical malpractice is for the jury.' Syllabus Point 4, Hill v. Clarke, 161 W.Va. 258, 241 S.E.2d 572 (1978)." Syl. Pt. 5, Gaither v. City Hosp., Inc., 199 W.Va. 706, 487 S.E.2d 901 (1997). Despite this well-settled axiom, the circuit court in this case removed this question from the province of the jury by deciding it on summary judgment. Because the plaintiff, Annie Mack-Evans ("Ms. Mack-Evans"), was entitled to have a jurynot the circuit courtdetermine when she knew, or through the exercise of reasonable diligence had reason to know, of the alleged medical malpractice which led to her mother's death, I respectfully dissent from the majority's decision on this ground.[1]
Importantly, for purposes of the running of a statute of limitations, a wrongful death cause of action does not accrue until a plaintiff knows, or has reason to know through the exercise of reasonable diligence, that a particular entity engaged in conduct that is causally related to the death. Syl. Pt. 8, Bradshaw v. Soulsby, 210 W.Va. 682, 558 S.E.2d 681 (2001). The majority finds that Ms. Mack-Evans knew, or should have known, as of the date of her mother's death that Oak Hill Hospital Corporation ("the Hospital") was responsible for that death. In so holding, the majority conveniently ignores facts showing that when her mother died more than seven months after the Hospital's alleged wrongful acts, Ms. Mack-Evans reasonably believed that intervening events were to blame and, thus, had no reason to suspect the death was causally related to the Hospital's actions seven months before.
"A motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and *328 inquiry concerning the facts is not desirable to clarify the application of the law." Syl. Pt. 3, Aetna Cas. & Sur. Co. v. Fed. Ins. Co. of New York, 148 W.Va. 160, 133 S.E.2d 770 (1963). In considering a motion for summary judgment, courts "must draw any permissible inference from the underlying facts in the light most favorable to the party opposing the motion." Painter v. Peavy, 192 W.Va. 189, 192, 451 S.E.2d 755, 758 (1994).
In this case, when the complete factual record is reviewed and inferences are drawn in the light most favorable to Ms. Mack-Evans (as must be done on a motion for summary judgment), there can be no doubt that a genuine issue of material fact exists as to when the wrongful death claim accrued for purposes of the running of the statute of limitations. To understand the basis for my dissent, a full recitation of the facts as well as the law on what constitutes the accrual of a claim is necessary.
On January 28, 2004, eighty-six-year-old Mamie Mack ("Ms. Mack") was admitted to the Hospital to undergo elective hip replacement surgery. Upon her admission, a physician discovered that Ms. Mack's blood pressure was extremely elevated and ordered that her blood pressure be monitored every four hours. Ms. Mack's medical records, however, indicate that such readings were not recorded on her chart and that the Hospital failed to check her blood pressure as part of her pre-operative anesthesia evaluation. Ms. Mack's doctors, therefore, were unaware of her high blood pressure at the time of surgery. An expert hired by Ms. Mack-Evans to review these records opined that Ms. Mack's blood pressure was so high at the time of her surgery that the procedure should have been postponed. Neither Ms. Mack nor her family was informed of her elevated blood pressure, however, and the surgery proceeded as scheduled on January 29, 2004.
Immediately following surgery, Ms. Mack-Evans visited Ms. Mack and found her semi-conscious and groggy. Unknown to Ms. Mack-Evans, Ms. Mack's blood pressure was beginning to drop. Although a physician attempted to increase her blood pressure with an intravenous push around 5:25 p.m. that day, Ms. Mack's blood pressure continued to drop and remained dangerously low for approximately twelve hours. According to Ms. Mack-Evans' expert, this low blood pressure caused a lack of oxygen to the brain which resulted in a stroke or other brain damage.
The day after surgery, January 30, 2004, the Hospital contacted Ms. Mack-Evans and informed her that they had been unable to awaken Ms. Mack. The nurse who contacted Ms. Mack-Evans admitted that, because Ms. Mack had been pulling at her IVs as she regained consciousness following surgery, the Hospital had "re-sedated" her and she had not regained consciousness. This conversation led Ms. Mack-Evans to believe that "something was wrong;" specifically, that someone at the hospital had done something wrong by re-sedating her mother.
On February 19, 2004, Ms. Mack was discharged from the Hospital and transferred to the Hilltop Health Care Center nursing home facility ("Hilltop"). While at Hilltop, Ms. Mack suffered from additional illnesses, including a life-threatening urinary tract infection, infected bed sores, malnutrition, severe dehydration and a pus-filled abscess at the site of her feeding tube. On July 23, 2004, Ms. Mack was transferred to another nursing home. On August 5, 2004, she returned to the Hospital, where she died on August 9, 2004. The death certificate listed her primary cause of death as cardiopulmonary arrest, with overwhelming sepsis and bilateral pneumonia as underlying conditions. Eleven days later, on August 20, 2004, Ms. Mack-Evans was appointed the personal representative of Ms. Mack's estate.
"`Generally, a cause of action accrues (i.e., the statute of limitations begins to run) when a tort occurs; under the `discovery rule,' the statute of limitations is tolled until a claimant knows or by reasonable diligence should know of his claim.' Syllabus Point 1, Cart v. Marcum, 188 W.Va. 241, 423 S.E.2d 644 (1992)." Gaither, 199 W.Va. 706, 487 S.E.2d 901, Syl. Pt. 2. In the instant case, the majority has concluded that the wrongful death claim accrued on the date of Ms. Mack's death, August 9, 2004. Ms. Mack-Evans, however, contends that the discovery *329 rule prevented the claim from accruing until, at minimum, she was appointed as the personal representative of her mother's estate. She points out that, until her appointment, she was not able to obtain her mother's medical records and, thus, could not have learned through the exercise of reasonable diligence of the causal connection between her mother's death and the hospital's wrongful acts.
In Gaither, a seminal case expanding West Virginia jurisprudence on the nature and scope of the discovery rule, this Court held that a tort claim does not accrue for purposes of the running of the statute of limitations until the plaintiff knows, or should know through the exercise of reasonable diligence, at least three things. 199 W.Va. 706, 487 S.E.2d 901, Syl. Pt. 4. First, the plaintiff must know that he or she has been injured. Id. Second, the plaintiff must know "the identity of the entity who owed the plaintiff a duty to act with due care, and who may have engaged in conduct that breached that duty." Id. Third, the plaintiff must know that the entity's conduct had a causal relation to the plaintiff's injury. Id. Thus, the statute of limitations does not begin to run until a plaintiff knows, or by the exercise of reasonable diligence should know, all of this information.
In 2001, the Court clarified that the discovery rule applies not only to personal injury claims, but also to wrongful death claims. Bradshaw, 210 W.Va. 682, 558 S.E.2d 681. In Bradshaw, the Court established a new syllabus point for determining when a wrongful death claim accrues, enunciating the Gaither concepts as four requirements:
[i]n a wrongful death action, under the discovery rule, the statute of limitation contained in [the wrongful death statute] begins to run when the decedent's representative knows or by the exercise of reasonable diligence should know (1) that the decedent has died; (2) that the death was the result of a wrongful act, neglect, or default; (3) the identity of the person or entity who owed the decedent a duty to act with due care and who may have engaged in conduct that breached that duty; and (4) that the wrongful act, neglect or default of that person or entity has a causal relation to the decedent's death.
Id. at Syl. Pt. 8. Thus, in a wrongful death case, the claim does not accrue, for the purposes of the running of the statute of limitations, until the plaintiff knows, or through the exercise of reasonable diligence should know, (1) of the death, (2) that it was the result of another's act, (3) the identity of the entity who owed a duty of care to the decedent and who may have engaged in conduct breaching that duty, and (4) that a causal connection exists between that entity's conduct and the death. Id.
Most recently, this Court reaffirmed these discovery rule concepts in Dunn v. Rockwell, 225 W.Va. 43, 689 S.E.2d 255 (2009). In syllabus point four of that opinion, the Court explained that
[u]nder the discovery rule set forth in Syllabus Point 4 of Gaither v. City Hosp., Inc., 199 W.Va. 706, 487 S.E.2d 901 (1997), whether a plaintiff "knows of" or "discovered" a cause of action is an objective test. The plaintiff is charged with knowledge of the factual, rather than the legal, basis for the action. This objective test focuses upon whether a reasonable prudent person would have known, or by the exercise of reasonable diligence should have known, of the elements of a possible cause of action.
Id. at ___, 689 S.E.2d at 265. The Court then set forth, in syllabus point five, a five-step analysis for determining whether a particular cause of action is time barred. Id. The first step is to determine the applicable statute of limitations, which the Court found to be a purely legal question. Id. The second step is to "identify when the requisite elements of the cause of action occurred" and the third step is to determine whether the discovery rule should be applied. Id. The Court held that both of these steps "will generally involve questions of material fact that will need to be resolved by the trier of fact." Id. In fact, in most cases, the question of when a claim has accrued, and thus when a statute of limitations should begin to run, is a question for the jury. See, e.g., Gaither, 199 W.Va. at 714-15, 487 S.E.2d at 909-10.
*330 Turning to the instant case, Ms. Mack-Evans was clearly entitled to have a jury determine when the applicable statute of limitations should have begun to run, because genuine issues of material fact exist as to whether Ms. Mack-Evans knew or should have known of the facts linking the Hospital to her mother's death as of the date her mother died. Indeed, the record indicates that, until her mother's medical records were obtained, Ms. Mack-Evans believed that the Hospital's only potential error was in re-sedating her mother following surgery. Ms. Mack-Evans had no knowledge of the Hospital's alleged failure to track Ms. Mack's blood pressure prior to surgery, nor did she know that a drop in blood pressure following surgery likely caused Ms. Mack to suffer from a stroke or other brain damage.
Moreover, several medical entities besides the Hospital treated Ms. Mack between the date of the surgery and the date of her death. Indeed, by the time Ms. Mack died on August 9, 2004, Ms. Mack-Evans believed that the substandard care her mother received at Hilltop was the actual and proximate cause of her death.[2] The death certificate gave no indication that Ms. Mack's death was in any way related to her hip surgery or any other act by the Hospital and, thus, could not have put Ms. Mack-Evans on notice of the wrongful death claim against the Hospital. Thus, any conclusion at the time of Ms. Mack's death that the Hospital's actions or inactions were causally related to that death would have been completely speculative on Ms. Mack-Evan's part.
The majority, however, concludes that the discovery rule does not apply in this case because Ms. Mack-Evans admitted that she knew "something was wrong" as of the day after her mother's surgery. At most, that statement merely indicates that, as of January 30, 2004, Ms. Mack-Evans suspected that someone had done something wrong.[3] Such suspicions do not meet the criteria of Gaither and Bradshaw for the accrual of a wrongful death claim. Indeed, the record indicates that the Hospital's alleged wrongful act that caused Ms. Mack-Evans to suspect "something was wrong," i.e. the alleged re-sedation of her mother following surgery, was not, in fact, the wrongful conduct which ultimately led to her death.
Given these circumstances, a genuine issue of material fact clearly exists as to when Ms. Mack-Evans knew, or by the exercise of reasonable diligence should have known, that the Hospital's alleged wrongful acts were causally related to Ms. Mack's death. For these reasons, this case should have been remanded for a jury determination of whether the discovery rule tolled the statute of limitations on the wrongful death claim.[4] I agree, however, with the majority's analysis of the personal injury claim and, for the reasons stated in the majority opinion, would find that the personal injury claim is barred by the statute of limitations. I further join with the majority in the new syllabus point. *331 Accordingly, I concur, in part, and dissent, in part, from the majority's opinion.
NOTES
[1] Ms. Evans also was told that Ms. Mack was earlier sedated because she had tried to remove IVs from her arms.
[2] There is some indication in the record that Ms. Mack was briefly returned to the Hospital while residing at Hilltop.
[3] The death certificate listed the cause of death as cardiopulmonary arrest.
[4] The Notice of Claim is a prerequisite to filing an action against a health care provider. See W. Va.Code § 55-7B-6(b) (2003) (Repl.Vol.2008).
[5] A Screening Certificate of Merit is also a prerequisite to filing an action against a health care provider. Generally, the Screening Certificate of Merit should be mailed with the Notice of Claim. However, it is provided under W. Va.Code § 55-7B-6(d) that if a plaintiff has insufficient time to obtain a Screening Certificate of Merit, prior to the expiration of the applicable statute of limitations, the plaintiff may provide the same within sixty days of the date the health care provider receives the Notice of Claim.
[6] On September 22, 2006, Ms. Evans filed a complaint against Hilltop and nine other nursing home facilities. The complaint against the nursing home defendants also alleged personal injury and wrongful death theories of liability. On December 3, 2007, the separate actions against the nursing homes and the Hospital were consolidated. The record indicates that Ms. Evans was able to resolve the claims against the nursing homes and those defendants were dismissed from the case. The nursing home defendants are not involved in this appeal.
[7] The personal injury claim was filed pursuant to W. Va.Code § 55-7-8a (1959) (Repl.Vol.2008). Under this statute, a personal injury claim may be filed by a decedent's representative if the injury alleged did not result in the death of the decedent. That is, under this statute, a personal injury claim cannot be initiated by a decedent's representative if the injury complained of caused the decedent's death. In that situation, only a wrongful death claim may be brought. See Courtney v. Courtney, 190 W.Va. 126, 128 n. 5, 437 S.E.2d 436, 438 n. 5 (1993) ("[Injuries] resulting in death are covered by our wrongful death statute, W. Va.Code, 55-7-5 (1931)."); State ex rel. Horner v. Black, 156 W.Va. 290, 294-95, 192 S.E.2d 731, 734 (1972) ("[W. Va.Code § 55-7-8a] appl[ies] to the survival of an action where the injured party dies for reasons other than the injury sustained in an accident."). See also Conrad v. Wertz, 278 F.Supp. 428, 432 (N.D.W.Va.1968) ("[I]f Roy M. Conrad died of injuries received in the collision this action must proceed under the Wrongful Death provision. If his death . . . was for reasons other than the injuries suffered in the wreck . . ., this action is permissible under [W. Va.Code] section 55-7-8a."). In our review of the complaint in this matter, we are unable to determine whether the injuries allegedly sustained by Ms. Mack prior to her death are different from those that allegedly caused her death. Insofar as neither the circuit court nor the parties addressed this issue, we will assume that such a distinction was properly plead.

The above observations were made in full awareness that, if a decedent brings a cause of action for personal injury prior to death, and subsequently dies from such injury, his/her representative may revive the personal injury claim and simultaneously litigate a wrongful death claim. See Syl. pt. 3, Estate of Helmick by Fox v. Martin, 188 W.Va. 559, 425 S.E.2d 235 (1992) ("West Virginia Code § 55-7-8 (1989) authorizes the decedent's beneficiaries to recover damages for a decedent's pain and suffering incurred between the time of injury and the time of death where the decedent had instituted an action for personal injury prior to his death and the action was revived and amended pursuant to West Virginia Code §§ 55-7-8 and 55-7-6 (1989).").
[8] See Syl. pt. 1, Stuyvesant v. Preston County Com'n, 223 W.Va. 619, 621, 678 S.E.2d 872, 874 (2009) ("W. Va.Code § 55-7-6 (2008) . . . sets forth a two-year statute of limitations for wrongful death actions.") Syl. pt. 1, Gaither v. City Hospital, Inc., 199 W.Va. 706, 487 S.E.2d 901 (1997) ("The Medical Professional Liability Act. . . requires an injured plaintiff to file a [medical] malpractice claim against a health care provider within two years of the date of the injury[.]") Courtney v. Courtney, 190 W.Va. 126, 437 S.E.2d 436 (1993) ("In actions . . . for personal injuries, the appropriate statute of limitations under W. Va.Code, 55-2-12 (1959), is two years. These actions by virtue of W. Va.Code, 55-7-8a(a) (1959), survive the death of the plaintiff and the tortfeasor.").
[9] Pursuant to W. Va.Code § 55-7B-6(h), the mailing of a Notice of Claim tolls the statute of limitations if it has not expired.
[10] The case was filed two years and three days after the decedent's death.
[11] Ms. Evans' appellate brief does not address the Hospital's assertion as to when the medical records were received. However, Ms. Evans' summary judgment response brief acknowledged that the medical records were first requested on July 25, 2006, and were received on August 18, 2006.
[12] In her response brief to the summary judgment motion, Ms. Evans made allegations of fraudulent concealment which prevented her from discovering relevant facts. However, the fraudulent concealment allegations were not raised in her petition for appeal nor in her brief on appeal. To the extent that the issue was raised below, but not on appeal, it is deemed waived. See Canterbury v. Laird, 221 W.Va. 453, 457 n. 9, 655 S.E.2d 199, 203 n. 9 (2007) ("Insofar as Mr. Canterbury failed to raise or argue any issue in his brief pertaining to summary judgment on his conspiracy liability theories, we deem the matters to be waived." (citations omitted)).
[13] Ms. Evans raised the issue of "insanity" in a supplemental response to the Hospital's motion for summary judgment.
[14] West Virginia Code § 55-2-15 (1923) (Repl. Vol.2008) tolls the statute of limitations for a person under an age or mental disability at the time a right of action accrues. The statute provides as follows:

If any person to whom the right accrues to bring any such personal action, suit or scire facias, or any such bill to repeal a grant, shall be, at the time the same accrues, an infant or insane, the same may be brought within the like number of years after his becoming of full age or sane that is allowed to a person having no such impediment to bring the same after the right accrues, or after such acknowledgment as is mentioned in section eight of this article, except that it shall in no case be brought after twenty years from the time when the right accrues.
[15] Although the trial court's order found that both causes of action began to run on the date of Ms. Mack's death, the order did not provide any separate analysis of the "insanity" issue. Insofar as this issue was raised by Ms. Evans in her supplemental response, we must assume that the trial court agreed with Ms. Evans that the statute of limitations was tolled on the personal injury claim prior to Ms. Mack's death.
[16] This Court has held that, "[i]n order for mental illness to toll the commencement of the running of the statute of limitations pursuant to W. Va.Code § 55-2-15 (1923), the plaintiff must show that the interval between the tortious act and the resulting mental illness was so brief that the plaintiff, acting with diligence, could not reasonably have taken steps to enforce his or her legal rights during such interval." Syl. pt. 4, Worley v. Beckley Mech., Inc., 220 W.Va. 633, 648 S.E.2d 620 (2007).
[17] Ms. Evans also cited to the decision in Harper v. Walker Manufacturing Co., 699 F.Supp. 85 (S.D.W.Va.1988). Harper simply is not relevant because that case involved an injured person who was insane, but alive, when a committee was appointed to represent him. The court in Harper correctly held that the injured person's insanity was not removed until appointment of his mother as committee to handle his affairs. In the instant proceeding, no one was appointed as a committee for Ms. Mack during her period of mental disability. Therefore, Ms. Mack's mental disability was not removed until the day she died.
[18] The administrator of Mrs. Staton's husband's estate had died, so the action was brought against his estate.
[19] The opinion went on to reverse the judgment on the grounds that additional defendants had to be added to the case.
[1] I concur with the majority's holding that the personal injury claim is barred by the statute of limitations, and join with the majority in its new syllabus point.
[2] Prior to instituting the instant case, Ms. Mack-Evans sued Hilltop without naming the Hospital. This is just one of the facts on which a jury could have relied to find that, at the time of her mother's death, Ms. Mack-Evans reasonably believed that Hilltop, not the Hospital, was at fault for the death.
[3] Ms. Mack-Evans acknowledged that she contacted a lawyer while her mother was still at the Hospital, and was informed that she could not bring a personal injury claim on her mother's behalf, so long as her mother remained alive.
[4] I would further require the jury to determine the date by which Ms. Mack-Evans knew, or should have known through the exercise of reasonable diligence, of the existence of the wrongful death claim. Ms. Mack-Evans was appointed the personal representative of her mother's estate approximately eleven days after her mother passed away. She asserts that she did not know that a wrongful death claim existed against the Hospital until an expert reviewed her mother's medical records. She admits, however, that she did not even request those records until shortly before filing this suit. Because Ms. Mack-Evans had the ability to request Ms. Mack's medical records as soon as she was appointed as the personal representative of the estate, a jury could reasonably conclude that, under the discovery rule, the statute of limitations would only toll until Ms. Mack-Evans had obtained the ability to request the medical records. At that point, the exercise of reasonable diligence would have revealed the existence of the claim and, pursuant to the discovery rule, the claim would have accrued and the statute of limitations would have begun to run. See Bradshaw, 210 W.Va. 682, 558 S.E.2d 681, Syl. Pt. 8.